## North America Building Association *versus* Sutton.

35   463
186   157

35       463
24 SC  ⁴262

35       463
31 SC  ⁴518
35       463
d218     524

The receipt book of a corporation containing entries of payments by a member, is evidence against the company, without producing the officer by whom they were countersigned.

Such entries are not to be rejected because they furnish evidence of other payments than those for which they are properly admissible in evidence.

In an action against a building society, for unjustly refusing to permit a transfer of certain shares of stock held by the plaintiff, the latter is entitled to recover the amount paid on the stock, as dues, with interest thereon from the time of the several payments.

Payments by a member of a building society, who has obtained a loan and given a mortgage to secure its payment, on account of instalments upon his shares of stock, are not *ipso facto* payment of so much of the mortgage-debt, although he may so treat them in a suit upon the mortgage; and therefore, a recovery upon the mortgage is not conclusive evidence of the extinguishment of the shares of stock.

The receipt of payments on account of instalments due on the plaintiff's shares of stock, after a recovery on the mortgage, will estop the company from denying the existence of the stock.

Error to the District Court of *Philadelphia*.

This was an action on the case by Samuel Sutton, for the use of William M. Kennedy, against The North America Building Association, for unjustly refusing to permit the plaintiff, Samuel Sutton, to transfer seventeen shares of the defendant's stock to William M. Kennedy.

Samuel Sutton, who was a member of The North America Building Association, and the owner of seventeen shares of its capital stock, in May 1852, borrowed from the association the sum of $3400, to secure the payment of which he executed to them a bond and mortgage, dated the 9th June 1852. A by-law of the company required that he should also transfer his shares of stock as collateral security for the loan. It did not distinctly appear whether Sutton transferred to the association the whole of his stock, or only ten shares of it.

Sutton being in arrear to the association, they instituted a suit on his mortgage, to December Term 1856, and on the 27th May 1857, recovered a verdict thereon for $2390.42; on this verdict judgment was entered in favour of the association, which was subsequently affirmed by the Supreme Court; and the amount of the judgment having been paid to the attorney for the association, out of moneys advanced for that purpose by William M. Kennedy, the equitable plaintiff, satisfaction was entered on the mortgage on the 11th November 1858.

The association was then required to permit a transfer of Sutton's shares of stock to William M. Kennedy, which they refused

to do, on the ground that but $96 per share had been paid thereon by Sutton, whereas they were actually worth $153.80 per share; the difference arising from the premiums paid by members for loans, and interest on those loans. Their refusal was based on the fact that Sutton had never paid the premium on his loan, having received an allowance for it in the verdict recovered on the mortgage.

On the trial, the plaintiff offered in evidence the receipt book of the company, containing entries of the amounts paid in by him, countersigned by the officers to whom they were respectively made, on proof by the secretary that it was the receipt book of the corporation. To this the defendant objected, on the ground that the receipts included dues, interest, and fines, in a single item, and because some of them were not in the handwriting of the witness. The court overruled the objection, and sealed a bill of exceptions.

The court below (STROUD, J.) instructed the jury to find for the plaintiff, for the amount which Sutton had paid to the defendants on seventeen shares of stock, as dues, with interest on the same from the date of the several payments; and reserved the point, whether the judgment in the former suit upon the mortgage, to secure the payment of which the shares of stock which were the subject-matter of this action, were transferred to the association, was a bar to the plaintiff's right to recover in this suit.

There was a verdict for the plaintiff for $1544.48, subject to the opinion of the court upon the point reserved. And on a subsequent day, the court *in banc* gave judgment for the plaintiff on the verdict, the following opinion being delivered by STROUD, J. :—

" The nominal plaintiff, Sutton, was a member of the association here named as defendant, and owner of seventeen shares of its stock. As such, he obtained the loan of a sum of money, for which he gave the corporation his bond for $6800, conditioned to pay half that sum in one year, with interest on the same. He also gave, bearing even date with the bond, a mortgage on real estate, to secure the payment of the bond. He pledged, besides, as a further security for the loan, the shares of stock in the company.

" By the charter and by-laws of the corporation, he was bound to pay a certain sum monthly, as an instalment of the price fixed as the value of the shares of stock, and to pay the interest which should accrue on the principal sum named in the bond and mortgage. He paid a considerable sum of money as such monthly dues and interest, but at length was unable or unwilling to continue these payments, and desisted.

" A *scire facias* was then issued to enforce the payment of the

[North America Building Association v. Sutton.]

mortgage. The defendant in that action, who is the plaintiff in this, put in the single plea 'payment.' On the trial of the cause, the there defendant gave evidence under this plea, showing that the money which he had actually received when he gave his bond and mortgage, was but $2378, and not $3400, as stated in these instruments; and he claimed a deduction of $1022, the difference between $3400 and $2378, being the amount deducted when he obtained the loan. Under the decision of the Supreme Court, the jury were directed to allow this deduction, and give the verdict for the balance with interest. The jury conformed to this direction, and the verdict was rendered for the plaintiff, for $2390.42.

"The action now before us was afterwards instituted to recover damages, for a refusal by the corporation defendant to transfer the seventeen shares of stock before mentioned to the plaintiff.

"It is unnecessary to state much of the evidence given on the trial, as, upon a full examination of the reasons for a new trial, by each party, for each party has applied for a new trial, we do not see a meritorious ground for the disturbance of the verdict. There was, however, a *point reserved* on the trial, upon which we have heard the arguments of counsel, and upon which it is incumbent on us to give a judgment. It arises in this way. It has been stated that on the trial of the *scire facias* on the mortgage, the defendant in that action pleaded *payment*, and under that plea obtained a deduction of $1022, being an amount withheld by the corporation as lenders, to the then defendant, under the name of a premium. This deduction was all that it was supposed on that trial could be claimed by the borrower to be allowed. But, some time after the trial, the Supreme Court had before it the two cases of Kupfert v. The Guttenberg Building Association, 6 *Casey* 465, and Hughes's Appeal, *Id.* 471. In these cases it was decided, that the value of the stock, or rather the amount which, as monthly dues, had been paid upon it, a mortgagor might claim as an abatement from the sum actually loaned by the building association, which had taken an assignment of the stock as a collateral security, &c. The plea of payment would seem to be the proper plea, upon a *scire facias* on the mortgage, to authorize evidence of the amount paid upon the stock. Hence, it is argued upon the authority of Hess v. Heeble, 6 *S. & R.* 59; Croft v. Steele, 6 *Watts* 373; Sterner v. Gower, 3 *W. & S.* 136; and Carmony v. Hoober, 5 *Barr* 305, and other similar cases, that it should be presumed that the value of the stock or the monthly dues had been allowed to the then defendant, in the verdict which was obtained in the North America Building Association v. Sutton, in its suit upon the mortgage, and if so allowed it would be a bar to the present action, to recover the value of the stock as damages, for refusing to transfer it.

VOL. XI.—30

[North America Building Association *v.* Sutton.]

"We think the argument is possessed of much strength; but, inasmuch as it is plain upon the evidence, that neither party ever supposed that they stood to each other on the footing of such a relation, but, on the contrary, since the recovery of judgment on the suit upon the mortgage, payments or monthly dues upon the stock have been made to a considerable extent, we prefer, instead of taking a step perhaps in advance of what has been ruled, to enter judgment on the point reserved for the plaintiff. The record may then be removed to the Supreme Court, and an authoritative decision given, which may relieve or prevent embarrassment in future cases, a large crop of which, we have reason to believe, is fast maturing."

The defendant thereupon sued out this writ, and here assigned for error: 1. The admission of the evidence excepted to, on the trial: 2. The charge of the court: 3. The entering of judgment on the reserved point.

*S. T. Van Sant,* for the plaintiff in error, cited Bechtold *v.* Brehm, 2 *Casey* 269 ; Kupfert *v.* Building Association, 6 *Id.* 465 ; Hughes' Appeal, *Id.* 471 ; Hess *v.* Heeble, 6 *S. & R.* 57 ; Wilson *v.* Hamilton, 9 *Id.* 424 ; Ingraham *v.* Hall, 11 *Id.* 78 ; Kilheffer *v.* Herr, 17 *Id.* 319 ; Carvill *v.* Garrigues, 5 *Barr* 152 ; Hayes *v.* Gudykunst, 1 *Jones* 221 ; Rockwell *v.* Langley, 7 *Harris* 502 ; Miller *v.* Manice, 6 *Hill* 122 ; Logan *v.* Caffrey, 6 *Casey* 196.

*Briggs,* for the defendant in error.

The opinion of the court was delivered by

STRONG, J.—This was an action against the building association, to recover damages for refusing to permit the plaintiff to transfer seventeen shares of stock held by him therein. On the trial, a verdict and judgment were obtained against the defendants. It is now assigned for error, that the court below permitted to be given in evidence certain receipts of the officers of the association to the plaintiff, for money paid by him to them. The objection is, that the receipts were not proved by the person who signed them. They were, however, official receipts, in the book of the corporation, furnished by it to the plaintiff, and proved by its secretary. Even if we admit that they were but declarations of the officer who signed them, yet they were made in the discharge of his duty as an officer, and, therefore, were admissible against the association, whose agent the officer was. On the trial of the issue between the plaintiff and the association, the testimony of the person who signed them would have been no better evidence than was that of the secretary, whose testimony was admitted. The

[North America Building Association *v.* Sutton.]

fallacy of the argument of the defendants below is in the assumption that the testimony of the secretary was secondary. It was no more secondary than would have been that of Springer himself.

Nor were the receipts inadmissible because they embraced sums paid for fines, and interest upon the debt due, as well as for instalments upon the stock. Evidence of what had been paid upon the stock was important to show its value. The introduction of proof of other payments was a necessity caused by the defendants themselves. They could not have been injured by it, for it was in their power to show how much was paid for fines, and how much for interest. There is nothing, therefore, in the first assignment of error.

Equally unfounded is the second. The jury were instructed to find a verdict for the plaintiff for the amount which Samuel Sutton had paid the defendant, on seventeen shares of stock, as dues, and the interest on the same from the time of their several payments. The objection to this is, not that there had been no refusal to permit the transfer, but that there was evidence that only ten shares had been assigned to the corporation. If the fact were so, what difference would it make in the plaintiff's right? That he subscribed for, and had been the holder of, seventeen shares, that he had transferred either all of them, or at least ten, to the association as collateral security for the payment of his bond and mortgage to them, and that all which was legally recoverable upon the bond and mortgage had been paid, were undisputed facts in the case. It is probable that all were held by the association as collateral. The loan was on the security of all, and the rules required all to be transferred. The witness only knew that ten had been. His knowledge was negative. The fair presumption was that the defendant held all. But if it were not so, the plaintiff offered to transfer the entire seventeen. The defendants refused to permit it, and their refusal was based, not upon the ground that they held only ten, or that he did not own seventeen, but because he had not paid the premium upon the loan made to him. They insisted that, after having paid all which was legally due upon his debt, after having satisfied the judgment obtained upon his mortgage (as collateral security for which they held the shares), he should pay something more, which he was not in law bound to pay. That was a demand which they had no right to make, and it was no justification for a refusal to permit a transfer, whether the shares stood in their name, or in the name of the plaintiff. We need hardly say that there was no evidence that the ownership of the seventeen shares, originally subscribed by Sutton, did not still remain in him. The attempted transfer to his son was never consummated, nor was that to Lewis S. Coryell. It was

not on account of either of these that the refusal of the defendants was made.

The remaining assignment of error raises the only important question in the cause. Upon the mortgage which the plaintiff had given to secure the payment of the money borrowed by him from the association, a *scire facias* was issued to December Term 1856. A plea of payment with leave was put in, and a verdict and judgment were rendered in favour of the mortgagees for $2390.42¾. The verdict was obtained on the 26th of May 1857, and the judgment was signed on the 23d of September in the same year. It is now contended, that this record establishes conclusively that Sutton, the plaintiff, recovered and was allowed, under his plea of payment to the *scire facias*, the full value of his stock; that he then had credit for all the instalments which he had paid; that they were applied in satisfaction of the mortgage, and that consequently he is estopped from a recovery in the present case. This position is rested upon what was said in Guttenburg Building Association *v.* Kupfert, and Hughes' Appeal, 6 *Casey* 465 and 471. In those cases, which were questions of distribution after a sheriff's sale of the property mortgaged, it was held that payments on account of the stock were to be regarded as payments on account of the loan. If this be so, it is argued, and with great force, that after the judgment upon the *scire facias*, it must be taken as settled, that the plaintiff has already had a credit upon his mortgage for the value of the stock, so far as it was made up by payments of instalments. The doctrine of those cases was perhaps in advance of the general understanding. It was considered to be necessary, in order to protect the borrowing community from the oppression and hardships to which they are so often subjected by the money-lending associations now so numerous, and so unlike in character to what was supposed when the legislature provided for their incorporation. It is well known that the original design of the legislature was to encourage the erection of buildings. The motive for the grant of the franchise was public improvement. But the practical working of the associations formed under the law, has not been what was anticipated. Though called "building societies," they are, in truth, only agencies by which a greater than legal interest is obtained from the necessitous and unwary. It was the knowledge of this fact which led to the effort made in the cases cited to afford some protection to the borrower. What was then said, however, is not to be regarded as laying down the rule that payment of dues on the stock, *ipso facto*, works an extinguishment of so much of the mortgage. The debtor may so apply it, but the payment itself is not an application of the money to the reduction of the mortgage. To hold that it is, would be giving to the associations additional facilities for obtaining excessive interest. The debtor is not compelled to

give up his stock, whenever suit may be brought upon his bond or mortgage. Such would, however, be the necessity of his case, if the law applied, against his consent, the instalments paid by him upon his stock, to the discharge of his indebtedness for the money borrowed.

In the case in hand, it is plain, that the plaintiff did not so apply the stock payments which he had made. No credit for them was allowed to him on the trial of the *scire facias.* It may be, it was not then supposed he could claim or receive credit. The cases in 6th *Casey* had not been decided. Certain it is, that the payments were not then thus applied, for, after the verdict was obtained, both parties treated the stock as subsisting. The verdict was rendered on the 26th of May 1857; yet, on the 6th of July afterwards, Sutton paid, and the defendants received, $570.22 on account of back dues and fines on the seventeen shares of stock. Again, on the 5th of April 1858, Sutton paid $204.24, on the same account; on the 3d of May 1858, Mr. Kennedy, the equitable plaintiff, paid for Sutton $17, one month's dues payable on that date; and, once more, June 7th 1858, Mr. Kennedy paid another month's dues. This all took place after the rendition of the verdict, and most of it after the entry of the judgment. The receipts show that the dues were all paid up to June 1858, until long after the plaintiff offered to make the transfer, and the defendants refused to permit it. How then can they now say that any portion of the stock has been extinguished? How can they aver that the payments were applied in satisfaction of the mortgage? Long after the judgment on the *scire facias,* and long after the payment of the judgment, they treated the stock as valid and existing, received numerous payments upon it, and acknowledged that all instalments upon it which were due had been paid up to about the time when this suit was brought. What honest pretence had they to receive payments of instalments in 1857 and 1858, if the stock was then not in existence? And how can they justly contend that any of the payments were on the mortgage, and not on the stock, in the face of their receipts of May 7th and June 3d 1858? Even if the instalments paid before the verdict in the *scire facias* must be considered as having been made on the mortgage, the defendants are in turn estopped from denying that the stock exists, and that all dues upon it were satisfied until after the demand and refusal to transfer.

There was no error, therefore, in entering judgment for the plaintiff upon the reserved point. This disposes of all the assignments of error, and leads to the affirmance of the judgment.

Judgment affirmed.