Benjamin Podol B. & L. Assn. et al., Appellant,
v. Polak.

Argued November 12, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Whitmore, JJ.

*Albert S. C. Millar,* for appellant.

*Robert F. Bogatin,* for appellee.

Opinion by Baldrige, J., January 30, 1931:

This action was brought to recover the sum of $455, with interest, on two promissory notes given by the defendant to the Benjamin Podol Building and Loan Association. The first note is dated November 2, 1925, in the sum of $180, payable one year from date, with Certificates Nos. 157, 163 and 164 of the first series of the capital stock of the association, aggregating 20 shares, as collateral security. The second note is dated August 4, 1928, in the sum of $275, payable "within one year from date," with Certificate No. 157 for 15 shares of the capital stock of the association as collateral security.

The defendant set up payment, alleging that there had been, by agreement, an appropriation of the value of his stock in liquidation of the notes, and, in a counter-claim, alleged there was due him from the association the sum of $787, with interest from August 6, 1928, representing the value of the stock over and above his indebtedness to the association.

The case was tried in the municipal court before Judge Cassidy, without a jury, and judgment was rendered in favor of the defendant.

We are called upon in this appeal by the plaintiff to consider: (1) Can a stockholder, who has assigned his stock as collateral for a loan, withdraw that stock before he repays the loan? (2) Was there proper proof of the defendant's withrawal as a stockholder from the association? (3) Was the building and loan association solvent at the time of the withdrawal?

Under the Act of April 29, 1874, P. L. 73, Sec. 37, West's Pa. Statutes, Par. 2421, provision is made for the withdrawal from the association by a stockholder, but no stockholder shall be entitled to withdraw whose stock is held in pledge for security. The courts, however, have consistantly recognized the right of a borrower from a building and loan association to elect to

treat all installments paid on stocks as credits on his loan and direct the officers of the association to appropriate the same for that purpose, provided the appropriation is made before insolvency: North Amer. B. & L. Assn. v. Sutton, 35 Pa. 463; Freemansburg B. & L. Assn. v. Watts, 199 Pa. 221; Orient B. & L. Assn. v. Freud, 298 Pa. 431; Erthal v. Glueck, 10 Pa. Superior Ct. 402 (412); Cons. B. & L. Assn. v. Shipley, 95 Pa. Superior Ct. 232. The defendant undoubtedly had the right to direct the liquidation of his loan by appropriating the amount paid on his stock, provided, of course, the association was solvent.

That brings us to the appellant's second question: "Where the defendant alleges the by-laws require written notice of a stockholder's desire to withdraw to be given to the secretary, does he properly prove his withdrawal when he does not offer proof of such notice?"

The defendant testified that on August 6, 1928, he called at the office of the association and informed Podol, "the man the building and loan was run by," that he desired to withdraw from the association and that Podol stated that if he would sign a request to withdraw and "a release of the books," which represented the 20 shares of stock in the association, he would be sent a check. Thereupon, he signed a withdrawal notice and delivered the books to the secretary and Podol told him that he would deliver the papers to the directors in the evening and that he would be notified further. The following day Podol notified defendant to come to the office "that the withdrawal had gone through O. K. but he would not be able to get any money until I had my books straightened up to date." At that time some back payments were due on defendant's stock and Podol told him he would have to adjust the matter. The defendant said that it was then agreed that Podol, who owed him $130 for work done,

would pay $100 into the association on account of the amount due on his stock. Podol then suggested that the defendant execute a stock loan note, in the sum of $275, in order to permit his withdrawal from the association, thus making a payment to the association of $375, which was represented to the defendant as the amount he owed to that date on his stock. Needleman, the secretary of the association, who was present, also informed the defendant that it would be necessary for him to sign a note so that the dues, etc., of his stock would be paid to date, before he could receive a check for the entire amount paid by him on his stock less the loans. Thereupon, the defendant executed the $275 note and a check was drawn to his order for a like amount which he endorsed and returned to the plaintiff's secretary.

The court found from this testimony that the defendant was induced by the officers of the building and loan association to execute the stock loan so that he might withdraw from the plaintiff association; that the written withdrawal notice was received and accepted by the association, and the value of the defendant's stock, which was sufficient to pay the notes, was applied to their payment. There was some question as to whether or not five shares of the stock to which defendant claimed title was in his name as trustee, but the evidence shows that on pass book No. 157, for 15 shares, he had paid in $855 which was in excess of the amount required to pay his loans. Whether or not the defendant owned the other five shares is not essential to this issue. We regard the evidence sufficient for the trial judge's conclusion that a proper notice was given. The last question involves the alleged involvency of the association. The position taken by the appellant is, that the association was insolvent at the time of the defendant's withdrawal from the association. The Secretary of Banking took possession of the associa-

tion on December 20, 1928, over four months after the alleged withdrawal by the defendant. The total amount of the assets at that time was $88,466.77, a substantial portion of which was represented by mortgage loans. The liabilities totalled $77,534. In the course of liquidation of the affairs of the association, the assets dwindled so that at the time of the trial, January 7, 1930, they amounted to $38,301.11. There was no other specific evidence to prove the insolvency of the association at the time of this alleged withdrawal. It was within the plaintiff's power to obtain and give more definite information as to the financial status of the association at or about the time of this withdrawal. The plaintiff having averred the insolvency of the association, it was his duty to prove it; solvency or insolvency was a question of fact. We cannot say that the evidence which related only to the condition of the financial affairs of the association when it was turned over to the Banking Department conclusively showed that the association was insolvent four months prior thereto.

We find nothing that would warrant us in disturbing the conclusions reached by the trial judge.

Judgment of the lower court is affirmed.