# Blattenberger v. Sharswood Building and Loan Association

*Kraus & Weyl*, for plaintiff; *William Brown, Jr.*, for defendant.

BROWN, JR., J., October 14, 1933.—The bill avers, inter alia, that on March 22, 1933, the defendant building and loan association being solvent, plaintiff directed the appropriation of a sufficient portion of the sum of $1,550, paid in by him on 10 shares of its stock, to the payment and cancellation of a stock loan of $400 made by him, and prays that defendant be directed to cancel the loan on its books and to return his notes.

The answer sets up the belief that it was solvent, but that the Banking Department's examination showed that it was insolvent, and also that the department had placed it on a restricted basis, directing it "to make no allowances of credit for back stock in the payment of any loan or in the reduction of any loan made by the defendant."

From the admissions in the pleadings and the proofs, I make the following

### Findings of fact

1. On or about April 21, 1920, plaintiff subscribed to 10 shares of the seventh series of stock of the defendant building and loan association, represented by book no. 372.

2. On July 26, 1932, plaintiff pledged his 10 shares of stock as security for a stock loan of $200, granted him by defendant, which was increased on October 19, 1932, to $400, and on each of those dates he signed and delivered to defendant a promissory note in the amount of $200. He has regularly paid interest on the loan up to and including February 16, 1933, at the rate of 6 percent per annum.

3. On March 22, 1933, plaintiff directed defendant to appropriate a sufficient portion of the sum of $1,550, paid in by him on the 10 shares of stock, to the payment and cancellation of the stock loan of $400 and interest due thereon, and demanded the return of his two notes.

4. On March 22, 1933, defendant was solvent.

5. The Secretary of Banking issued no order on February 9, 1933, or at any other time, directing defendant not to apply a sufficient portion of plaintiff's shares to the cancellation of his loan.

## Discussion

A borrower from a building and loan association has the right to elect to treat payments made on account of stock as credits on his loan and to direct the association to appropriate them for that purpose, providing this direction is made when the association is solvent: Orient Building & Loan Association v. Freud, 298 Pa. 431, 436; Savitz Bldg. & Loan Ass'n v. Lissman, 101 Pa. Superior Ct. 501, 505; Benjamin Podol B. & L. Ass'n et al. v. Polak, 102 Pa. Superior Ct. 36, 38, 39. That the association subsequently becomes insolvent or is taken over by the Department of Banking does not affect an appropriation made prior thereto: Savitz Bldg. & Loan Ass'n v. Lissman, supra, pp. 505, 506; Benjamin Podol B. & L. Ass'n et al. v. Polak, supra, pp. 40, 41.

The bill avers that on March 22, 1933, when plaintiff directed defendant to appropriate a sufficient portion of his shares to the payment of his loan, defendant was solvent, and also sets forth a statement of its condition, issued and delivered by it to its stockholders, showing "earnings or profits" of $22,110.86, as of April 15, 1933. The answer states that "defendant believes that it is solvent", but that the Department of Banking "declared defendant insolvent, which declaration is due to the fact" that the department "placed a value of $24,000 less than that placed by defendant" on its real estate, "which value, if true, is in excess of the earnings and profits of $22,110.86 as found by the defendant in its statement", so that the defendant "had no earnings or profits as shown by said statement."

Plaintiff offered in evidence defendant's statement of its condition on April 15, 1933. This shows that it was solvent, that is, able, after paying its general creditors, to "pay back to its shareholders, dollar for dollar, the amount of contributions:" Stone v. Schiller Building & Loan Ass'n et al., 302 Pa. 544, 552. Indeed, it shows earnings or profits for distribution among its shareholders. Defendant presented no figures or other data to the contrary, but relied upon letters received from the Department of Banking. In none of these is it stated that defendant was insolvent. That of February 9, 1933, refers to "the necessity for the immediate placing of temporary restrictions", which were "temporary in nature, but are to be continued until confirmed, removed or modified at a hearing to be called . . . as soon as work upon the (Banking Department's) examiner's report has been completed". That of April 8, 1933, states that "at the hearing . . . Friday, April 7, 1933, it was determined that" the defendant "was in an unsafe and unsound condition", and also that "within sixty days" it was "to submit . . . a plan for the rehabilitation of" its "affairs". But an "unsafe and unsound condition" is not an insolvent one. True, it may require "rehabilitation", but that indicates that insolvency may be avoided. However, the Secretary of Banking has not taken possession of defendant; and although reference was made in his letters to the "result of an examination dated January 25, 1933, and appraisals of" defendant's "real estate and excessively delinquent mortgage loans", neither he nor any of his employes testified as to defendant's condition. Opportunity to do so was given by the trial being twice adjourned for that purpose, but the assistant supervisor of banking chose to add nothing to the letters. These are not conclusive or even persuasive that defendant was in fact insolvent on March 22, 1933.

The answer also states that defendant's refusal to apply a sufficient portion of plaintiff's shares to the cancellation of his loan was not "of its own action",

but "under the express order and direction of the Department of Banking of the Commonwealth of Pennsylvania, issued to defendant on February 9, 1933". This was the letter from the Secretary of Banking, placing "temporary restrictions" on defendant, wherein it was "requested" that it "pay no withdrawals, declare or pay no maturities, and grant no mortgage loans or stock loans". Although on March 22, 1933, plaintiff also gave notice of withdrawal as to the balance of his shares and defendant has placed his name on the withdrawal list, he is not asking for the payment of the withdrawal value of his stock, but merely for the cancellation of his loan. The appropriation of stock to the payment of stock loans was not included among the "temporary restrictions" of February 9, 1933. Indeed, no mention thereof was made as late as April 8, 1933, when the Secretary of Banking "requested" defendant to "segregate money received from free shareholders and deposit the same in a separate account. . . . No mortgage loans, stock loans, or withdrawals are to be allowed", and it was not until May 3, 1933, that the secretary advised defendant that it "may not apply stock against a stock loan and return the stock loan note as long as the association is under restrictions". Apparently this was an afterthought, brought about only in reply to an inquiry made by defendant and due perhaps to a change in the latter's financial condition. In any event, plaintiff's rights were not affected, for these were fixed when he directed the appropriation of his stock.

Section 20 of The Banking Act of June 15, 1923, P. L. 809, provided that "Whenever it shall appear to the secretary that any corporation . . . is conducting business in an . . . unsafe manner, or that any such corporation has an impairment of capital, the secretary may issue an order, under his hand and seal of office, directing such corporation . . . to discontinue . . . such unauthorized or unsafe practices, or directing such corporation to make good, within a time of not more than sixty days after notice by the secretary, any impairment or deficiency of capital". The letters from the secretary above referred to were not under his "seal of office". Indeed, they were not signed by him but by the assistant supervisor. They were not orders but merely requests. The defendant was not directed "to make good . . . any impairment or deficiency of capital". True, that of April 8, 1933, states that "within sixty days you are to submit to this office a plan for rehabilitation of your affairs", but submitting such a plan is not making good an "impairment or deficiency of capital". The letters referred to no "unauthorized or unsafe practices", but to the regular and proper acts of a building and loan association in the conduct of its business. Upon these the secretary was attempting to place "temporary restrictions". Under section 808 of the Building and Loan Code of May 5, 1933, P. L. 457, he now may do so by issuing an "order of segregation", but no such authority was vested in him prior to July 3, 1933, when that act became effective. It is therefore apparent that the letters had no legal significance, and that defendant should have credited plaintiff's payments on account of his shares of stock to the cancellation of his loan.

I have therefore come to the following

## Conclusions of law

1. Plaintiff's direction to defendant to appropriate a sufficient portion of the payments made by him on account of his stock to the payment of his loan was a payment in full of the loan.

2. Defendant should cancel on its books the stock loan made to plaintiff and return to him his two notes.

*Decree nisi*

And now, October 14, 1933, upon consideration of the foregoing case, it is ordered, adjudged and decreed that the Sharswood Building and Loan Association, the defendant, shall immediately credit so much of the sum of $1,550 paid in by Raymond Blattenberger, the plaintiff, on account of his 10 shares of defendant's seventh series of stock, represented by book no. 372, as may be necessary to pay in full plaintiff's stock loan in the amount of $400 and the interest due thereon as of March 22, 1933, cancel the stock loan on its books and return to him his two promissory notes dated July 26th and October 19, 1932.

NOTE.—No exceptions were filed to the adjudication.