## Kanatas, Appellant, *v.* Home Life Insurance Company of America.

Argued December 3, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Calvin F. Smith,* with him *John B. O'Brien* and *Joseph Levine,* for appellant.

*Arthur S. Arnold,* with him *Chidsey, Maxwell & Frack,* for appellee.

OPINION BY MR. JUSTICE LINN, January 11, 1937:

Appellant complains that a verdict was directed for the defendant in her suit on a policy of insurance on the life of her husband, effective April 12, 1929. Five times between February 12, 1933, and March 12, 1934, the insured permitted the policy to lapse for non-payment of premium, and five times it was reinstated. The learned president judge of the court below held that the reinstatement was obtained by misrepresentation of facts essential to reinstatement. The insured died of sarcoma of the lungs September 30, 1934.

Appellant's first proposition is in these words: "Can an insurer avoid liability on a policy of life insurance by wrongfully lapsing same for non-payment of premiums during the period of grace and before the expiration of same, and then on the death of insured defend on the ground that the insured had given false answers for reinstatement after such wrongful lapse?" Obviously the answer would be no. But the question does not state the issue presented. If we understand plaintiff's argument, it is that the insured paid his premiums quarterly at irregular times and in installments, and, so regarding the time, there was no lapse. We must reject the contention. We infer from the admission of plaintiff's counsel made at the trial that the premiums were payable monthly. While the policy provided that premiums might be paid quarterly, it also provides as follows: "PAYMENT OF PREMIUMS: Premiums are due and payable annually in advance but (including the first year's premium) may be paid in semi-annual, quarterly or monthly installments. Except as herein provided the payment of a premium or installment thereof shall not maintain this policy in force beyond the due date of the next premium or installment of premium." The monthly rate is slightly higher than the quarterly rate and plaintiff's replication avers that the higher rate was paid, which confirms the conclusion that it was pay-

able monthly. Plaintiff called a witness, Burke, who testified to the dates of premium payments from the delivery of the policy to the death of the insured. During the introduction of evidence by defendant, plaintiff asked for an offer of proof; whereupon, as the record shows, the following admission was made on behalf of plaintiff. "Mr. Arnold [for defense]: I offer to prove by this witness the payments from the inception of the policy to the date of the death of James Kanatas, the dates of each payment, which is practically the same as Mr. Burke testified. Mr. Smith [representing plaintiff]: It is admitted that the amounts and time of payments as testified to by Mr. Burke are correct. Mr. Arnold: I also propose to prove by this witness that there were no other amounts received from Kanatas or any one on his behalf than those payments. Mr. Smith: It is agreed that that is a fact."

We cannot reject those facts. The premium was payable monthly; there were lapses and the applications for reinstatement necessarily admitted defaults from time to time; the insured conceded, by his applications, that there had been five defaults or lapses.

The next point is whether the reinstatement was obtained by misrepresentation. Does the evidence show conclusively that the representations, on the faith of which the reinstatement was made, "were false in fact and that the insured knew they were false when he made them, since an answer known by insured to be false when made is presumptively fraudulent"? *Evans v. Penn Mutual Life Ins. Co.*, 322 Pa. 547, 553, 186 A. 133.

The proofs of death, produced by defendant on plaintiff's call, were offered in evidence by plaintiff for the "purpose of showing compliance with the terms of the policy"; defendant objected to the limited character of the offer; the objection was overruled, the learned president judge received them saying, "The question of their sufficiency is reserved but they will be received as part of the plaintiff's case." They consisted of four parts,

one filled out by the beneficiary and three by various physicians. Defendant again offered them in evidence in its case and was met by objection on behalf of the plaintiff. In the part of the proofs of death executed by plaintiff herself, she stated that the insured first complained of, or gave other indications of, his last illness, on January 7, 1933, and upon that date consulted a physician for this illness. These statements were made under oath. In response to a request for the names and addresses of all physicians who had attended the insured during his last illness and for three years prior thereto, she gave the names of two, after each name, adding "see Dr. Certificate", which was attached. In examining the attached certificate, we find in the first one that the insured died of recurrent sarcoma of the lungs; that the physician operated on January 7, 1933, and removed the sarcoma, with the result, as he reported, that there was an "operative recovery for several months then recurrence." The plaintiff cannot now require the truth of her sworn statements, uncontradicted and unexplained,[1] to be submitted to the jury to ascertain whether they are true or not; she is bound by them: *Evans v. Penn Mutual Life Ins. Co.*, 322 Pa. 547, 556, 186 A. 133, and cases there cited.

The insured's representations on which reinstatement was obtained were false. The illness of January 7, 1933, involving the removal of a malignant tumor was material to the risk: *New York Life Insurance Co. v. Brandwene*, 316 Pa. 218, 223, 172 A. 669. The insured must have known that his representation was false for the operation of January 7th was so recent and so serious that he could not have forgotten it: *Evans v. Penn Mutual Life Ins. Co.*, 322 Pa. 547, 554, 186 A. 133; *Kzyszton v. John Hancock Mutual Life*, 320 Pa. 65, 181 A. 587; *New York Life Ins. Co. v. Brandwene*, 316 Pa.

[1] Materially differing in this respect from *Osche v. New York Life Ins. Co.*, 324 Pa. 1, see p. 5, 187 A. 396.

218, 172 A. 669; *Baxter v. New York Life Ins. Co.*, 115 Pa. Superior Ct. 287, 294, 175 A. 899.

Appellant also contends that the defense is barred by the provision in the policy providing that "except for nonpayment of premiums, [it] shall be incontestible during the lifetime of the Insured, two years from its date of issue." The subject was referred to in *Smith v. State Mutual Life Assurance Co. of Worcester*, 321 Pa. 17, 184 A. 45, in which it was decided that when a policy lapsed for nonpayment of premium, it was no longer a contract, and when reinstated it was reinstated in its entirety. We said of the incontestability provision that where there is reinstatement after lapse for nonpayment of premiums the insurer has two years from the reinstatement within which to investigate the condition of the insured. The assignment raising this point is overruled.

We need not discuss the 5th assignment beyond saying that the brief does not call attention to any error. It violates Rule 22 which prohibits including more than one point in a single assignment. Apparently, as the learned trial judge said "The answer of the witness is only a mathematical calculation and just exactly what is provided under the non-forfeiture clause of the policy."

Appellant also complains of the admission of hospital records. We have not found them in the printed record and do not know what they contain excepting as may be gathered from the fact that they were made by the surgeon who operated on the insured for the removal of the sarcoma. This surgeon testified that he made some of the entries and that the rest were made under his direction and that he approved them before they were completed; if, in the circumstances, this record was not admissible, the error was harmless. The relevant portions of the proof of loss were sufficient to prove the false representation on the basis of which, we assume, the learned president judge directed a verdict for the defendant.

Finally, appellant contends that, assuming the policy to be void for false representation at the time of reinstatement, the unearned premiums paid should be credited on the loan to the insured which would leave a balance that would extend the insurance until after his death. The contention must be rejected. Pursuant to a provision in the policy,[2] defendant had made a loan to the insured equal to the surrender value.[3]

Our attention has not been called to any provision in the policy that would authorize the defendant to

---

[2] "LOANS: At any time after three full years' premiums have been paid, and while this policy is in full force, the Company will loan, upon proper assignment of the policy, and upon the sole security thereof, an amount, which, with interest thereon to the end of the current policy year, shall not exceed the cash surrender value, at the end of the said year; deducting therefrom any unpaid portion of the premium for said current policy year; any existing indebtedness on the policy, and interest on the loan to the end of the current policy year; interest on the loan will be at a rate not exceeding six per centum per annum payable annually in advance. Failure to repay any of the loan, or to pay interest, shall not avoid the policy, unless the total indebtedness thereon to the Company shall equal its cash surrender value, not until thirty-one days after notice of the fact shall have been mailed by the Company to the last known address of the owner of the policy."

[3] The policy loan agreement was as follows: "I have received this day from The Home Life Insurance Company of America, Inc., the sum of one hundred & eighty ——— 49/xx dollars, as a loan upon the sole Security of Policy No. 161482 for $5,000; issued 4-12-29 by said Company on the life of James Kanatas with interest thereon from 4-12-34 until paid, at the rate of 6 per cent per annum, to be paid annually in advance on the anniversary of said Policy, which Policy, with all right, title and interest therein, is hereby assigned to said Company as security for this indebtedness, which is hereby agreed shall be a first lien against the same.

"It is further agreed that if interest on this note be not paid when due, said interest shall be added to the indebtedness upon the Policy until such time as the accumulated indebtedness shall equal the loan value of the Policy, when said Policy shall immediately cease and become void. x JAMES KANATAS, "Insured."

appropriate these premiums. The plaintiff's interest in them has passed to his personal representatives, and not to the beneficiary named in the policy. In rejecting a contention that dividends were applicable to extend the insurance under the terms of the policy in question the Supreme Court said: "But the policy gave no warrant for an application of the dividend to the reduction of advances against the policy. As this Court pointed out in *Board of Assessors v. New York Life Ins. Co.*, 216 U. S. 517, 522, such advances being against the surrender value do not create a 'personal liability' or a 'debt' of the insured, but are merely a deduction from the sum that the company 'ultimately must pay.' While the advance is called a 'loan' and interest is computed in settling the account, 'the item never could be sued for' and in substance 'is a payment, not a loan.' *Id.* The company had no right, without agreement with the insured, to apply a dividend, payable in cash, to the reduction of the advance against the policy." *Williams v. Union Central Co.*, 291 U. S. 170, 179-180; see also *Toncich v. Home Life Ins. Co.*, 309 Pa. 336, 163 A. 673; *Mfrs. Trust Co. v. Equitable Life Assur. Co.*, 244 App. Div. 357, 279 N. Y. S. 457; 92 A. L. R. 702, 706. The principle applied in those cases must be applied to this.

Judgment affirmed.