Black's Estate.

Argued January 8, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Frank F. Truscott,* with him *William N. Trinkle* and *Noar Klein,* for appellant, No. 226.

*Arthur E. Weil,* with him *Samuel Lander* and *William W. Smithers,* for appellee No. 226, and appellant No. 282.

*C. Wilfred Conard, George M. Miller, Jr.,* and *Conard & Middleton,* for appellee, No. 282.

OPINION BY MR. JUSTICE PARKER, March 24, 1941:

These appeals are from an order of the Orphans' Court of Philadelphia County disposing of exceptions to the report of an auditor appointed to audit the first and final account of Miriam P. Black, D. Franklin Black, Jr., and Herbert M. Packer, executors named in the will of D. Frank Black, deceased, as stated by D. Franklin Black, Jr. The appellants, Miriam P. Black and D. Franklin Black, Jr., are the widow and son of the decedent and the principal beneficiaries named in the will. D. Frank Black, prior to his decease on June 3, 1936,

was engaged in the dairy supply business on North Broad Street, Philadelphia, a successful and a profitable business built up after many years of effort. The son had been employed by him in his lifetime and was familiar with the details of the business. Expressions in decedent's will would indicate that he had enjoyed a happy family life from which discord was absent, although Miriam was his second wife and not the mother of his grown children. After his death harmony disappeared and conflicting interests have given rise to this litigation.

Decedent by his will first provided: "ITEM: 1—I direct that all of my debts, both personal and business, including funeral expenses be paid out of my business account as soon as convenient after my decease." After making minor bequests of money and personal belongings, he directed that his "business, good-will, furniture and fixtures, equipment and supplies, as well as all automobiles in my [his] name and used in the business with the exception of my [his] personal automobile, including all business bank accounts, Accounts payable and Accounts Receivable be given unto my [his] son, D. Franklin Black, Jr." He then expressed a wish that a corporation be organized and that his son be elected president and treasurer. After commenting on the happy relations that had existed in the family he expressed a further desire that the corporation should be good to his wife, Miriam, and give her, if possible, at least $75 a week as long as she remained single. He made his wife his residuary legatee, specifically providing that she should take all stocks, building and loan shares in his name "and all Insurance and Lodges", also his personal automobile, his personal bank account in the Girard Trust Company, and his savings account in the Liberty Title and Trust Company. He then named the widow, the son, and his friend, Herbert M. Packer, to be executors and trustees of his will.

The questions involved in these appeals are twofold: first, whether the son Franklin accepted the legacy provided by paragraph 8 of the will subject to liability for deceased's debts, and, second, whether certain specific items were to be paid out of his business.

1. The court below affirmed the finding of the auditor to the effect that the son Franklin accepted the gift to him contained in paragraph 8 of the will, saying: "That the son unequivocally elected to accept the testamentary gift of the business, subject to his payment of decedent's debts, is established by abundant, clear and convincing evidence. We approve the Auditor's finding without further discussion." We are all of the opinion that the finding was amply supported by the evidence. Consequently, we may not interfere with it. The subject was discussed exhaustively by the auditor and we will confine our discussion to a statement of a few of the reasons for holding as we do.

Franklin had been associated with his father in business; he not only knew the state of the business, but had knowledge of all the outside obligations of his father except a mortgage on land in New Jersey. He immediately qualified as executor of his father's estate and assumed active management of it. Within a week after the death of his father he sent a written notice to all the business customers of his father advising them of his father's death, that the business had been bequeathed to him, and that he would continue the business as his father had done. He forthwith cancelled the lease for the premises where the business had been conducted and took a new lease in the same building in his own name. By June 7, 1936, he was carrying on the business with the same personnel that had been employed by his father. He secured for himself representation as agent for various concerns which his father had represented. In sixty days he had liquidated seventy per cent of the business and within seven months, ninety-eight per cent

thereof. Although he deposited the proceeds in an estate account, this was but a recognition of the fact that the money so collected was to be used first in discharge of the obligations of his father as provided by the will. While he was entitled to a reasonable time to determine whether he would accept the legacy with its burdens, he did in fact accept it. Acting as executor he could not allow the assets of the estate to be dissipated; but he could not take advantage of his position as executor, take over the business for his own benefit and, after acquiring the business, say that he had not accepted the legacy with its burdens. The court below reached the only conclusion possible under the proven facts.

2. This brings us to a consideration of the disputes between the son and widow as to whether certain items are debts or obligations which should be paid out of decedent's business.

Share Loans by Two Building and Loan Associations: On April 14, 1933, decedent borrowed $450 from one building and loan association and, on June 12, 1934, borrowed $3,000 from another such association. In each case he gave his promissory note* payable one day after date and pledged installment stock in the particular association as collateral security. Not only was the withdrawal value of such installment stock in each association much more than the amount of the loan when it was made, but in each case the value of the stock was increased more than the amount of the respective loan

---

*Each note contained the following clause: "And I do, for myself, my heirs, executors, administrators and assigns agree that all monies heretofore or hereafter paid by me to said Association upon said pledged shares shall be considered as made in liquidation of this loan. Should I default in payment of the principal when called, or of the dues, interest, premium or fines due to said Association, for a period of six months, I authorize it to forfeit the shares hereinabove named and retain therefrom whatever may be due the Association on account of this loan, interest, fines, etc."

between the date of the loan and decedent's death. After death the stock was withdrawn and the withdrawal value less the amount of the particular loan was paid to the executors of the decedent. The auditor and court below properly held that "the loans made to decedent were not such 'debt' as could be charged against the business account."

Whether a borrowing by a stockholder from a building and loan association be called a loan or an advance, there is a different relation created between the parties than the usual one of borrower and lender. Prior to the enactment of the Building and Loan Code of 1933 (15 PS § 1074), even a defaulting borrower could not be required to repay to the association, while it was solvent, anything more than the difference between the amount of the loan and the amount paid on the installment shares, and in the case of a share loan the association would certainly not loan a stockholder a greater sum than was represented by the withdrawal value of the stock pledged as collateral. In short, the borrower could apply the withdrawal value of the stock in discharge of any obligation to the association on account of the advance, and the association could not have demanded more than the difference—here nothing: *Chase v. Vigilant-Champion B. & L. Assn.*, 133 Pa. Superior Ct. 262, 265, 2 A. 2d 584; *B. Podol B. & L. Assn. v. Polak*, 102 Pa. Superior Ct. 36, 38, 156 A. 556. Under the facts and the peculiar contract of hypothecation found here, the association could not have maintained an action against Black for any part of these loans: *York Trust, etc., Co. v. Gallatin*, 186 Pa. 150, 40 A. 317; *Kurtz v. Campbell*, 218 Pa. 524, 527, 67 A. 843; *Consolidated B. & L. Assn. v. Shipley*, 95 Pa. Superior Ct. 232. In the Shipley case the pledge was in the identical words found here.

Under the new code it is provided that the borrower repaying a share loan may take credit for the withdrawal value of the shares securing such loan up to the

amount of the principal of the loan, and when the association is not in possession of the Secretary of Banking as receiver or of a liquidating trustee, the association shall not have the power except in case of default to demand payment of any mortgage or share loan until the shares transferred and pledged to it as security for the loan have matured: Section 911 (15 PS § 1074-911). These building and loan associations having had no claim against the decedent at the time of his death which they could compel him to pay, the business was not responsible for the same. There was no existing debt.

Advance on Life Insurance Policy: Decedent on April 25, 1935, secured a cash advance from the Equitable Life Assurance Society of the United States, assigning a life policy held by him as security. The agreement provided that the advance with interest should be deducted from any sum payable on the policy at death. At the time of Black's death the amount due on the policy exceeded the advance and interest by a considerable amount. The auditor and court below held that the advance was not such a debt as was required to be paid out of the business of decedent. With that conclusion we are in accord, for the association could not make any claim against the estate of decedent. It could not have proceeded against the decedent at the date of his death. Consequently there was no indebtedness, as clearly appears from a perusal of the agreement. The policy holder had the right to repay the advance made but he could not be compelled to do so.

Loan on New Jersey Real Estate: Decedent and his wife, Miriam, became the owners as tenants by entireties of a tract of land in New Jersey on which there was a mortgage. The husband and wife subsequently entered into a collateral bond to indemnify the mortgagees against any loss. The agreements were New Jersey contracts. Shortly prior to his death decedent and his wife entered into an agreement for the sale of the real estate for more than the amount of the encumbrances.

This agreement was consummated and the mortgage was paid from the proceeds subsequent to his death. The auditor and court below correctly held that this was not such a debt as was required to be paid out of the decedent's business. In such a case the law of New Jersey on the subject is applied in this state: *Sea Grove B. & L. Assn. v. Stockton,* 148 Pa. 146, 23 A. 1063. The proofs show that by the applicable law of New Jersey a mortgagee may not collect on the bond until after foreclosure and then only the deficiency: *Rogovin v. Kridel,* 116 N. J. L. 97, 182 A. 828, 120 N. J. Eq. 337, 184 A. 822; *Timmins' Est.,* 338 Pa. 475, 13 A. 2d 7. It is clear that there was no indebtedness for which the estate of Franklin Black was liable. Therefore the item could not be charged to his business.

Loan on Philadelphia Real Estate: The Savings Fund Society of Germantown made claim against decedent's estate for a sum loaned decedent and his first wife for which they executed a bond and gave a mortgage on premises at No. 3108 Midvale Avenue, Philadelphia. Just prior to the decease of D. Frank Black, the premises were owned by him and his second wife, Miriam P. Black, as tenants by entireties, and the balance then due on the bond and mortgage was $11,500. The auditor directed that this sum should be allowed and paid out of the business. The court en banc likewise so ordered but further directed that upon payment of the claim out of the business assets "such bond and mortgage or judgment thereon, be duly assigned, in subrogation, to the said D. Frank Black, Jr." We agree with the conclusion reached by the auditor basing that result on the peculiar terms of the will and particularly that provision requiring payment of decedent's debts from the business bequeathed to the son. The will exhibits a primary intent that the widow should have sufficient out of his estate to meet her necessities, that the son should have the benefit of the valuable business decedent built up in his lifetime, but that the legacy to the son

should carry certain responsibilities which would at the same time add to the amount received by the widow. To require the business to pay the bond and mortgage and then permit the son to be subrogated by the amount of such payment meant nothing unless the real estate was worth less than the amount of the mortgage. The creditor asked payment from the personal estate as it had a right to do under the law of this state since Black's estate was solvent: *Mason's Appeal,* 89 Pa. 402; *Merkel's Estate,* 131 Pa. 584, 18 A. 931. As between the son and the widow, the residuary legatee, the will provided that the debts should be paid from the business. In short, the liability was placed by the will for it determined that such primary liability should rest on the business. To grant the son a right of subrogation would not only defeat the clear intent of the will but would be in contradiction of its terms.

Claim of J. B. Van Sciver Company: This claim presented for the consideration of the auditor and the court below a pure question of fact. The fact finding body, on sufficient evidence, found that the decedent purchased the bill of goods in question on his credit by oral agreement with the merchant. This made him liable for the claim and under the terms of the will it is properly chargeable against the business.

It will be necessary to modify the decree of the court below by striking out that portion which provides that upon payment of the claim of the Savings Fund Society of Germantown, the bond and mortgage or judgment thereon be duly assigned in subrogation to D. Frank Black, Jr.

The decree of the court below as modified is affirmed, the costs in each appeal to be paid by D. Franklin Black, Jr.