## Schwartz Estate.

Argued January 14, 1952. Before DREW, C. J., STERN, STEARNE, BELL, CHIDSEY and MUSMANNO, JJ.

*Morris H. Fussell,* for appellants.

*David F. Maxwell,* with him *Edmunds, Obermayer & Rebmann,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, March 24, 1952:

The question involved is whether a "policy loan" upon a life insurance policy is a debt of such a nature as enables the designated beneficiary, upon the insured's death, to require the loan to be repaid from the insured's general estate, thus enabling the beneficiary to receive the full insurance proceeds. The court below ruled that it was such a debt and directed its repayment. This appeal followed.

George J. Schwartz, the decedent, was insured by two policies of life insurance, each in the amount of

$5,000. In one policy decedent named two of his daughters beneficiaries, and in the other he designated his first wife. Neither policy reserved the right to change beneficiaries. But each policy *obligated* the company to make "loans" to the insured to the limit of its cash surrender value. "Loans" were granted in the aggregate amount of $3,466.80.

By his will the testator-insured directed his executors "to pay my funeral expenses and all my just debts as soon after my decease as may conveniently be done." It was upon the theory that the "policy loans" created a debtor-creditor relationship between the insured and insurer, that the learned court below decreed that the beneficiaries were entitled to reimbursement from the general estate in order that they should receive the full face amounts of the policies.

In support of its ruling the court below relied upon our decision in *Wilson Estate,* 363 Pa. 546, 70 A. 2d 354, wherein we decided that in an assessment of transfer inheritance tax, credit must be allowed for an indebtedness of the decedent-insured where a loan was made to him *by a bank,* and his life insurance policy, payable to designated beneficiaries, was pledged as collateral security. We said, p. 551: "Decedent (settlor) merely assigned the insurance policies *as collateral* for his loan. As with any other collateral, when a loan is repaid the collateral is returned to the owner. Had the creditor bank used decedent-settlor's insurance collateral to liquidate its loan, the designated insurance beneficiaries could have enforced their claim against the estate of the decedent under their right of *subrogation,* to the same extent as if they had been the original creditor."

In the case now before us, contradistinguished from the facts in *Wilson Estate,* supra, the "debt" was owed to the *insurance company* and not to a third person with

the insurance policy assigned as collateral. This raises the narrow but important question whether any sound difference exists between the fundamental natures of these transactions. More accurately: does such an insurance "loan" from the insuring company *upon the policy itself* create a debtor-creditor relationship?

The learned court below, and counsel at argument stated that they have been unable to find any reported case in this jurisdiction which has decided this question. Our own research has disclosed none. But courts in at least six other jurisdictions have considered the problem. They unanimously agree that a "loan" granted pursuant to a policy right does not create a debtor-creditor relationship. The nature of such a "policy loan" has recently been discussed in *Fidelity Union Trust Co. v. Phillips,* 5 N. J. Super. 529, 68 A. 2d 574. It is said, p. 575: "A clear distinction is drawn between a loan made by an insurance company to an insured against a life policy, and a collateral loan made by a third party secured by an assignment or pledge of the policy on the life of the borrower. The former 'is not a loan in the strict technical sense, for there is no obligation of repayment on the insured, but rather an advancement on the cash value of the policy, the repayment of which will reinstate the depleted insurance without the issuance of a new policy and the submission of evidence of insurability. A "loan" by the insurer in such circumstances does not give rise to the relationship of debtor and creditor.' David v. Metropolitan Life Insurance Co., 135 N. J. L. 106, 50 A. 2d 651, 653, (Sup. Ct., 1947), affirmed 136 N. J. L. 195, 54 A. 2d 731, (E. & A., 1947). Mr. Justice HOLMES declared in Board of Assessors v. New York Life Insurance Co., 216 U. S. 517, 30 S. Ct. 385, 386, 54 L. Ed. 597, 1910, 'This is called a loan. It is represented by what is called a note, which contains a promise to pay

the money. But as the plaintiff (insurance company) never advances more than it already is absolutely bound for under the policy, it has no interest in creating a personal liability, and therefore the contract on the face of the note goes on to provide that if the note is not paid when due, it shall be extinguished automatically by the counter credit for what we have called the reserve value of the policy. In short, the claim of the policy holder on the one side and of the company on the other are brought into an account current by the very act that creates the latter. The so-called liability of the policy holder never exists as a personal liability, it never is a debt, but is merely a deduction in account from the sum that the plaintiffs ultimately must pay.' Therefore, when an insurance company advances to an insured a sum of money against his policy, and upon the death of the insured retains the amount required to satisfy the 'loan' or advance, the beneficiary named in the policy is not entitled to recover from the estate of the insured the amount by which the insurance had been depleted by borrowings by the insured upon the policy. Wagner v. Thieriot, 203 App. Div. 757, 197 N. Y. S. 560, affirmed 236 N. Y. 588, 142 N. E. 295 (Ct. App. 1923) ; In re Hayes' Will, 252 N. Y. 148, 169 N. E. 120 (Ct. App. 1929) ; In re Waldsburger's Estate, 78 Colo. 516, 242 P. 982, 45 A. L. R. 518, (Sup. Ct. 1926)."

In the foregoing case, the insured had first borrowed from the insurance company and later repaid such "loan" and borrowed from a bank assigning the policy as collateral in order to obtain more favorable interest rate. The New Jersey court decided that while a debtor-creditor relationship existed in such latter three-party transaction, yet because of the terms of a trust agreement executed by the insured, it was disclosed that the insured only intended the beneficiaries to take the *net* proceeds of the policies without right of subrogation against his estate.

A portion of the language of Justice HOLMES of the United States Supreme Court relied on by the New Jersey court was also quoted with approval by Justice LINN in *Kanatas v. Home Life Insurance Company of America,* 325 Pa. 93, 100, 189 A. 293, in considering whether unearned premiums should have been applied to an outstanding loan in order to extend the insurance.

The reason why the subrogation rationale of *Wilson Estate,* supra, cannot be applied to a "policy loan", is well stated in *Faris v. Faris,* 76 Ind. App. 336, 130 N. E. 444, p. 446: "With this primary fund [the insurance proceeds] for its protection, out of which it had agreed to collect the debt, it had no rights, in lieu thereof, against the general personal estate. Such being the case, there were no rights to which appellant could be subrogated." See also *Walker v. Penick's Ex'r.,* 122 Va. 664, 95 S. E. 428; *Allen v. Southard,* 177 Tenn. 541, 151 S. W. 2d 1072.

Substantially the same rule was adopted by this Court in *Black's Estate,* 341 Pa. 264, 19 A. 2d 130. The insurance policy there included a provision almost identical with that now under consideration, except that payment by insurer was more accurately termed an "advance" rather than a "loan". Decedent had bequeathed his business to his son subject to payment of all his personal and business debts. A dispute arose between the son and the widow, as residuary legatee, as to whether certain items were debts or obligations payable out of the business. Concerning a cash advance to decedent from his insurance company, we said (p. 270) : "The auditor and court below held that the advance was not such a debt as was required to be paid out of the business of decedent. With that conclusion we are in accord, for the association could not make any claim against the estate of decedent. It could not

have proceeded against the decedent at the date of his death. Consequently there was no indebtedness, as clear-ly appears from a perusal of the agreement. The policy holder had the right to repay the advance made but he could not be compelled to do so."

While counsel for appellees point to factual distinctions between that case and the present one, such distinctions have no bearing on the legal principle here involved.

Legal digests and text writers appear to be equally unanimous. "Although a policy loan is termed a 'loan,' it differs from an ordinary commercial loan, and, in fact, is not a 'loan' in the ordinary sense of the word. It is merely a deduction from the sum insurer ultimately must pay, and is more accurately described as an advance.": 44 C. J. S. Insurance, sec. 337, p. 1291. Accord: 29 Am. Jur. Insurance, sec. 463; Goldin on Insurance in Pennsylvania (2d ed.) page 631; 2 Couch on Insurance, sec. 335; Cooley's Briefs on Insurance (2d ed.) page 157.

Appellees argue that the insured's will and his testamentary scheme, considered in the light of his family circumstances, reveal that he intended his insurance beneficiaries to receive the full face amount of the policies. But the insured's *testamentary intent* is not the controlling consideration. We are obliged first to determine his *contractual intent* at the time he entered into the contracts of insurance wherein the rights of the insurance beneficiaries were created. We cannot interpret the meaning of contracts entered into on June 11, 1913, by speculating on testamentary intent adopted by insured in his testamentary scheme of April 2, 1949, nearly thirty-six years thereafter. The terms of the insurance contracts are clear and unambiguous; they give the insured an absolute right to demand at any time an advancement of any sum of money up to the reserve

value of the policies. Under no discernible doctrine could it be held that the insured was incurring a *personal liability* by exercising this contract right. The insured could, of course, have directed by his will that the "policy loans" be paid out of his general assets so that the beneficiaries would receive the face amounts of the policies. As he chose not to do this, we have no power to do it for him. We cannot construe a direction to pay "debts" as applicable to an advancement of money which did not create a personal liability. As an insurance policy loan does not create a debtor-creditor relationship, the beneficiaries of these policies so encumbered are entitled. only to the *net* proceeds.

Decree reversed at appellees' cost.