## Biron Estate

*Ginsburg & Weisberg*, for accountants.

*Felix & Felix* and *Kathryn M. Renzulli*, for claimant and objector.

*Ralph C. Donohoe*, for Commonwealth.

BOLGER, J., June 21, 1955.—Decedent died April 17, 1954, leaving a will dated April 1, 1950, which was duly admitted to probate. He was married at the time of his death and was survived by two children, Edwin Herbert Biron and Lucille Biron. . . .

Three questions have been presented: The first relates to an interpretation of the will which provides in paragraph

"SECOND: I give and bequeath unto my beloved wife, HENRIETTA E. BIRON, forty-five percent (45%) of my estate in addition to all personal property and household goods, which I possess."

The will then gives to his son, Edwin Herbert Biron "forty-five percent (45%) of my estate", and to his sister, Mrs. Lena Gilles, "ten percent (10%) of my estate" with alternative provisions which need not be recited since she survives.

In behalf of the widow, it has been claimed that the words "in addition to all personal property and household goods which I possess" constitute a gift of the entire estate inasmuch as decedent left no real estate. In support of this argument reference is made to the account which shows that at the time of his death the principal asset was an undivided one-half interest in the partnership of Benjamin Biron and Ludwig Cahn, and that the son, Edwin Herbert Biron, was designated beneficiary of certain life insurance policies totaling $18,500. If decedent's intention as expressed in his will was to bestow his entire estate upon his widow, it is impossible to reconcile the fractional shares given to his wife, his son and his sister. The intent of testator must be found within the four corners of the will: Wright Estate, 380 Pa. 106.

At the audit, the scrivener of the will was called and objection was made to his testifying concerning the instructions he received from testator. The objection

was sustained because the auditing judge believed that the will contains no latent ambiguity such as would permit introduction of extrinsic evidence: It is impossible to effectively carry out the manifest intention of this testator to divide his residuary estate, excluding therefrom only articles of personal use and household goods among his son, his wife and his sister if the words "all personal property" are to be considered to pass his entire estate. If this argument were to prevail, it is apparent that even the words "and household goods" are unnecessary. I, therefore, find that the widow is entitled to receive the tangible personal property as set forth in the account and inventory, excluding the interest in the partnership and the cash on deposit in the Girard Trust Corn Exchange Bank and that the balance is to be divided in the percentages indicated in the will.

The next question is raised by the son, who had been designated as beneficiary of the life insurance policies. During his lifetime decedent borrowed $5,700 from the Corn Exchange National Bank and Trust Company and pledged as collateral certain of the insurance policies which became payable to the son at death. Upon his death the bank collected the proceeds of the policies, deducted the balance then due on the loan, viz., $3,220.21 and remitted the difference to the designated beneficiary. He now claims that he is subrogated to the rights of the bank, particularly since the will in the first paragraph directed payment of all decedent's just debts. At the time that the loan was procured, an assignment of the policies was signed by decedent and also by the beneficiary. This assignment expressly gave to the bank the right to receive the proceeds at maturity and apply the same against the debt.

At the time the loan was made and continuing until his death, the insured reserved the right to change the

beneficiary. It has been argued in support of the right of subrogation that in the absence of an express intention directing that the insurance *must* be used to pay the loan, the beneficiary is entitled to be reimbursed out of the estate: Goldstein Estate, 5 Fiduc. Rep. 57.

Consideration has also been given to Wilson Estate, 363 Pa. 546, 70 A. 2d 354, in which case the debt was paid by the executor although the loan was secured by life insurance and the payment was allowed as a deduction for inheritance tax purposes.

Landreth v. First National Bank of Philadelphia, 346 Pa. 551, is not in point excepting to the extent that it decides that proceeds of life insurance payable to a designated beneficiary are not assets of decedent's estate. In order to be subrogated to the rights of the creditor-bank, the son must affirmatively show that he has paid the debt. He did not do so. The bank collected the debt out of the collateral given to it by the insured and the designation of the son as beneficiary, subject to the assignment in favor of the bank, made him entitled to receive the net proceeds of the policy. He did not pay anything. This testator could have made an absolute assignment of the policy to his son and had there then been an assignment joined in by the son, the right of subrogation would have been absolute. The son would then have surrendered a property right.

Wilson Estate, supra, and Schwartz Estate, 369 Pa. 574, and Goldstein's Estate, supra, consider the intention of decedent as derived from the contract of assignment and the will. In giving such consideration in the present case, it is important to keep in mind that the insurance proceeds never became and were never intended to become a part of decedent's estate. On the contrary, the expressed intention of decedent in the collateral assignment was to direct the bank to collect the proceeds and after applying so much as

might be necessary to satisfy the loan, to turn over "any balance of sums received hereunder from the insurer remaining after payment of the then existing liabilities . . . to the persons entitled thereto under the terms of the policy . . .". This was no mere authorization, but an order to pay.

The joinder of the son in the assignment to the bank was of no effect except to place him upon notice that the loan existed and should the insured die with the loan outstanding, the rights of the assignee would, to the extent of the balance due, supersede his rights if he continued to be beneficiary. The claim of the son for reimbursement of the amount deducted from the life insurance policies is dismissed.

The third problem involves an objection by the widow to sale of an automobile owned as an asset of the partnership. This was accepted as part of the distribution from the partnership at a value of $1,327.58. It was later sold for $1,050. The automobile was in the possession of the widow who communicated an offer she had received for $1,100. One executer, the son, testified that he considered the automobile to have a greater value and although his judgment proved to be erroneous in view of the sale price, there was evidence that at one time this executor considered that the widow might accept the car as part of her distributive share of the estate. I am unable to find any such gross negligence as would justify a surcharge. I consider the dispute to have been largely due to a misunderstanding and am unable to find any bad faith on the part of the executors. The request for surcharge is dismissed.

The account shows a balance of principal of personal estate of $21,295.73
and a balance of income of 140.00

making a total balance of $21,435.73

which, composed as indicated, subject to payment of such transfer inheritance tax as may be assessed and found due, subject to payments on account of distribution heretofore properly made as shown therein, is awarded the tangible articles of personal property at inventory value to Henrietta E. Biron, and the balance then remaining is awarded 45 percent each to Henrietta E. Biron and Edwin Herbert Biron and 10 percent to Lena Gilles.

Leave is hereby given the accountants to make all necessary transfers and assignments.

And now, June 21, 1955, the account is confirmed nisi.