Miller Estate.

Argued September 28, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Henry E. Shaw*, with him *Scales and Shaw*, for appellants.

*Carroll Caruthers*, for appellees.

OPINION BY MR. JUSTICE COHEN, December 1, 1960:

These appeals are from the decree of the Orphans' Court of Westmoreland County. The facts in the case are not in dispute since the parties have filed an agreed statement.

On September 8, 1920, Samuel Miller obtained a policy of life insurance from the Northwestern Mutual Life Insurance Company and subsequently designated seven beneficiaries. On December 21, 1949, Samuel Miller was adjudicated a weak-minded person and the First National Bank in Greensburg was appointed guardian of his estate.

On September 8, 1950, the Court of Common Pleas of Westmoreland County decreed that the guardian, ". . . is hereby authorized to borrow the sum of Twenty-four Thousand ($24,000.00) Dollars, from the Union National Bank in Pittsburgh, Pennsylvania, and put up as collateral security the policy of insurance . . . issued . . . by The Northwestern Mutual Life Insurance Company. . . ." An assignment of the policy was duly filed with the insurance company and the authorized loan was made to the guardian. Samuel Miller died testate on February 8, 1952. The insurance company paid $24,447.99 to the bank, that sum being the amount then due on the loan made by the guardian.

The several beneficiaries named in the insurance policy filed a claim with the estate for $24,447.99, claiming the estate was indebted to them for the proceeds of the insurance policy used to repay the bank loan. The lower court approved the claim and filed a schedule of distribution which provided for partial payment to the insurance beneficiaries by way of subrogation to the bank's claim. The award consumed the entire balance of the estate and no distribution was available for the appellants.

Exceptions were filed by the three appellants to the allowance of the claim of the insurance beneficiaries. These appeals have been taken from the decree dismissing the exceptions.

These appeals require us to answer—Are the beneficiaries of an insurance policy entitled to recover from the insured's estate, by way of subrogation, the proceeds of an insurance policy on the insured's life, which policy the guardian of the insured, a weak-minded person, with court approval assigned to a bank as collateral for a loan for the benefit of the weak-minded person's estate, and the proceeds of which repaid the loan? The court below permitted the recovery and we agree.

The issue which is usually determinative of the problem in this area is the intention of the parties as indicated by the terms of the will, the insurance policy, the assignment and any other pertinent extrinsic evidence. When we apply this test, we find that there is usually no claim against a decedent's estate under an "insurance policy loan" because, by mutual agreement, the insurance company restricts itself to the proceeds of the policy for repayment of the loan. Thus, there can be no subrogation by the insurance beneficiaries. See *Schwartz Estate*, 369 Pa. 574, 87 A. 2d 270 (1952); *Black's Estate*, 341 Pa. 264, 19 A. 2d 130 (1941). Here, however, the problem is somewhat different since the insurance company did not make the loan; the insurance policy is merely collateral for a loan from a bank. The creditor in this case does have a claim against decedent's estate as well as against the collateral. Nevertheless, the intention of the parties, if ascertainable, must control.

In *Wilson Estate*, 363 Pa. 546, 70 A. 2d 354 (1950), where the policy of life insurance, containing the right to assign and to change beneficiaries, was assigned to a bank as collateral for a loan, this Court found, in a case involving inheritance taxes, that the amount of the debt secured by the collateral was a debt of the estate. This conclusion was reached on the basis of decedent's intent as expressed in the terms of the assignment to the bank. In the *Wilson* case we went on to say, as dicta, that, "Had the creditor bank used decedent-settlor's insurance collateral to liquidate its loan, the designated insurance beneficiaries could have enforced their claim against the estate of the decedent under their right of subrogation. . . ." In light of our interpretation of decedent's intent in that case this dicta was a correct statement of the law.

Although the orphans' court in *Biron Estate*, 4 Pa. D. & C. 2d 729 (1955), (relied upon by the defendant)

denied subrogation, that case is clearly consistent with the standards set forth by this Court. In *Biron Estate* the assignment specifically gave the bank the right to apply the proceeds of the policy against the debt and, after the amount necessary to satisfy the loan was deducted, to turn over any balance of the proceeds to the insurance beneficiaries. There could be no question as to decedent's intent in that case. Similarly, this Court in adopting the orphans' court opinion in *Goldstein Estate*, 384 Pa. 1, 119 A. 2d 278 (1956), 4. Pa. D. & C. 2d 606 (1954), sustained the proposition that the decedent's intent must control as to whether insurance beneficiaries get the net or gross proceeds under a policy which is assigned as collateral for a loan.

In the present case, the loan was negotiated pursuant to an order of the court by the guardian of a weak-minded person. The only evidence of the insured's intent would be his purpose as expressed at the time he designated the beneficiaries and that intent was that the beneficiaries should have the gross proceeds of the policy.

It is not necessary to decide whether the court or the guardian had the power to interfere with decdent's intended disposition since the action of the court and the guardian is not inconsistent with decedent's intent. The loan was made for the benefit of the estate. The remaining unpaid portion at decedent's death was a claim against the estate, and the life insurance policy was merely collateral for the loan.

Decree affirmed at appellants' cost.

Mr. Justice BENJAMIN R. JONES concurs in the result.

CONCURRING OPINION BY MR. JUSTICE BELL:

I concur, but for a very different reason and upon an entirely different basis.

On September 8, 1920, Miller took out a policy of life insurance on his life and designated seven beneficiaries. In the policy he reserved the right to change the beneficiaries and to assign the policy. On December 21, 1949, Miller was adjudicated a weak-minded person and the court-appointed guardian of his estate borrowed from the Union National Bank in Pittsburgh—with the approval of the court—$24,000 on a promissory note, together with an assignment of the policy of insurance as collateral security for the loan. After the assignment of the policy was duly filed with the Company, the bank made the loan.

At Miller's death, the Insurance Company paid to the bank, as is customary, the unpaid balance of the guardian's loan, with interest. The balance of the proceeds of the policy, namely $14,475.01, was paid to the named beneficiaries, although the record does not disclose whether it was paid by the bank or by the insurance company.

The lower court allowed the named beneficiaries a right of subrogation against Miller's estate for the amount which the bank received in payment of its loan, namely $24,447.99.

The majority admit (1) that if this was an insurance policy loan there could be no subrogation in favor of the policy beneficiaries: *Schwartz Estate*, 369 Pa. 574, 87 A. 2d 270; *Black's Estate*, 341 Pa. 264, 19 A. 2d 130. The majority decide that, because the proceeds of a life insurance policy are not a part of the estate of a decedent for tax purposes since they are by statute exempt from Pennsylvania Inheritance Tax, the insured's intention was to give the insurance beneficiaries the entire face amount of the policy. This is a non sequitur and it negates instead of fulfills

borrower's intention. We believe the majority's decision is contrary to experience, contrary to the practice which exists in such cases, and contrary to the insured's intention.

The vice of the majority's reasoning is that, in an attempt to discover the borrower's intention, it equates statutory taxation or exemption from taxation, with a right of subrogation. They are neither the same nor equal; they are in some material respects very different, and a result in a tax case is not apposite to and will not require the same result in a question of subrogation.

The majority opinion states that the only evidence of an insured's intent is found at the time he designated the policy beneficiaries and consequently his intent was that the beneficiaries should have the gross proceeds of the policy. It is clear that this was the insured's original but merely tentative intent, because he reserved the right to change the beneficiaries and to assign the policy or cancel it.

A named beneficiary in a life insurance policy— where the insured reserves the right to change the beneficiary and/or assign the policy—has but a mere expectancy* with no absolute or vested right or interest during the lifetime of the insured: *Henderson Estate*, 395 Pa. 215, 218, 219, 149 A. 2d 892; *Bayer's Estate*, 345 Pa. 308, 26 A. 2d 202; *Knoche v. Mutual Life Insurance Co.*, 317 Pa. 370, 176 A. 230; *Riley v. Wirth*, 313 Pa. 362, 169 A. 139; *Irving Bank v. Alexander*, 280 Pa. 466, 124 A. 634; *Weil v. Marquis*, 256 Pa. 608, 101 A. 70; *Fidelity Trust Co. v. Travelers' Insurance Co.*, 320 Pa. 161, 181 A. 594. A named beneficiary in a life insurance policy has, upon the death of the insured, an absolute or vested right in

---

* It is "The accepted doctrine that life insurance is generally regarded as sui generis": *Henderson Estate*, 395 Pa. 215, 220, 149 A. 2d 892.

the proceeds of the insurance policy, only if the insured (1) has not canceled the policy, or (2) had not changed or eliminated the named beneficiary, or (3) had not reduced or diminished the interest of the named beneficiary, in which event he would be entitled only to the diminished interest.

When an insured makes a loan from a bank or from any other lender which is evidenced by a promissory note and an assignment of the insurance policy as collateral security for the payment of the loan, it is clear that the insured's original intent has been changed. In the eyes of the law but not in the minds or intentions of the parties, the note is the primary obligation. An insured knows at the time he makes the loan, that the loan will be paid out of the proceeds of the policy and the named beneficiary of the policy will be paid what is left. The insured (borrower) knows and every bank and every other lender knows that *the parties intend* the loan to be paid, we repeat, out of the proceeds of the insurance policy and not out of the insured's estate where the claim may be contested and may be paid, if there are available funds, one or more years after the insured's death. To this extent the insured's original intention has been changed by the assignment, and he intends his named beneficiaries to receive not the face amount of the policy but the balance of the policy after the bank has been paid the amount of the loan. In the instant case, as in most cases, the policy beneficiaries did not pay the premiums nor did they pay or offer to pay the insured-decedent's debt to the bank; nor did any consideration move from them which would give rise to an equitable right of subrogation or reimbursement; nor did the insured direct by will or otherwise that the policy beneficiaries should be reimbursed by his estate. These are important factors which we believe the majority have overlooked. Cf. *Biron Estate*, 4

Pa. D. & C. 2d 729; cf. also the seemingly contrary
dicta in *Wilson Estate,* 363 Pa. 546, which dealt *solely*
with liability or nonliability for Pennsylvania inherit-
ance taxes of the proceeds of insurance policies which
were payable to designated beneficiaries.

The majority relies heavily on the statement about
subrogation in the *Wilson Estate* opinion which every-
one agrees was unquestionably dicta. Assuming argu-
endo that the dicta *as applied in that case* was sound
the majority do not appreciate how different the factual
situation in *Wilson* was from the factual situation in
the instant case. That was a complicated and unusual
case. In *Wilson Estate* a decedent borrowed money
from a bank (Girard Trust Company) on his note
which was secured by collateral consisting of his bank
accounts and all his personal property including, inter
alia, his assigned life insurance policies. The decedent
executed *simultaneously* on July 27, 1945, three in-
struments, one an inter vivos deed of trust under the
terms of which the insurance policies were made pay-
able to a named trustee (Girard Trust Company) for
the benefit of the designated beneficiaries—thus prima
facie giving the beneficiaries an interest which was
vested subject to being divested. *Henderson Estate,*
395 Pa. 215, 222, and cases cited therein. He then
executed his will in which he bequeathed his residuary
estate to the *same* trustee (Girard Trust Company) for
the benefit of the *same designated beneficiaries* and for
the same uses and purposes. The will also contained a
general direction to pay debts. This Court held that
"The deed thereby became incorporated in the will
and formed part of it under the doctrine of 'incorpo-
ration by reference' . . ." *The executors paid the de-
cedent's indebtedness to the bank out of assets of the
estate,* thereby releasing the collateral and getting a
return of the policies for the benefit of the designated
beneficiaries. *This Court ruled that the policies of*

*insurance were exempt from Pennsylvania inheritance tax* but added the following dicta (page 551) : "As with any other collateral, when a loan is repaid the collateral is returned to the owner. Had the creditor bank used decedent-settlor's insurance collateral to liquidate its loan, the designated insurance beneficiaries could have enforced their claim against the estate of the decedent under their right of subrogation, to the same extent as if they had been the original creditor." This language was used in unraveling a case where— (1) Wilson was (a) the insured, (b) the borrower from and debtor to the bank, (c) the assignor-pledgor of the insurance policy, (d) the settlor in the inter vivos trust, and (e) the testator; and (2) the Girard Trust Company was (a) the lender-creditor, (b) the assignee-pledgee, (c) the inter vivos trustee, (d) the executor, and (e) the testamentary trustee; and (3) the beneficiaries were exactly the same in the insurance policy and under the inter vivos deed of trust and under the testamentary trust.

In *Wilson Estate,* that dicta, whether we consider it sound or unsound as applied to the facts in that case, is obviously not applicable with respect to the highly different facts in the instant case.

To state it another way, a borrower *knows and intends* that unless he provides otherwise, the amount which will be payable to a policy beneficiary in an ordinary loan which is secured only by one or more policies of insurance is the *net* amount of the policy proceeds remaining after payment of the bank loan. A borrower likewise knows that if he has any other intention he can provide (differently in the assignment or) in his will that his executor shall reimburse the policy beneficiaries for the amount deducted by the bank for payment of its loan—if that is the borrower's intention. Absent such a provision, it is clear that that was not his intention.

That the foregoing represents the *insured's intent* is further evident from the fact that since the Wills Act of 1917 (section 18) a devisee of real estate which is subject to a mortgage is not entitled to exoneration by such a devise or by a general testamentary direction by the insured that his debts be paid. In the Wills Act of 1947* the Legislature thus provided: "Section 14. . . . (12) Real Estate Subject to a Mortgage. The devisee of real estate which is subject to a mortgage shall take subject thereto, and shall *not* be entitled to exoneration out of the other estate of the testator, real or personal; and this whether the mortgage was created by the testator or by a previous owner or owners, *and notwithstanding any general direction by the testator that his debts be paid."* This provision in the Wills Act of 1917 and of 1947 was passed to make clear and certain that the insured-testator's intent would not be voided in a situation exactly parallel to that in the instant case.

The foregoing statements lay down the general rule and the reason for the rule. However, the present case is an exceptional one because, since the Court approved and in effect ordered the loan for the living expenses of the incompetent-insured, it is difficult (a) to determine the insured's intention or (b) to say that his original intent to leave the policy proceeds to the named beneficiaries has been changed when he was incompetent to change it. For the latter reason, I would hold that in this case the testator's original intent had not been voluntarily changed, and the named beneficiaries would be entitled to (exoneration or subrogation or) reimbursement out of the insured's general estate for the amount of the proceeds of the policy which was used to pay the insured's bank loan.

---

* April 24, 1947, P.L. 89.