## Green Estate.

Argued March 24, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Robert L. Ceisler,* for appellant.

*Sanford S. Finder,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, July 1, 1964:

This is an appeal by Irving Saul, the named beneficiary in decedent's life insurance policy, from a decree of the Orphans' Court which dismissed his claim for subrogation against the estate of Sam Green. The question raised is whether such a beneficiary is entitled to subrogation against the estate of the insured decedent for that portion of the life insurance proceeds which were applied to satisfy a loan made by decedent for which the policy had been assigned as collateral.

Sam Green died testate on February 25, 1954, owning a life insurance policy with a face value of $5,000. Decedent had assigned this policy on October 2, 1946, to the Citizens National Bank of Washington, as collateral security for his loan.* The interest of Citizens National Bank was subsequently acquired by the Mellon National Bank and Trust Company. At the time of assignment to the Citizens Bank, the policy proceeds were payable to the decedent's estate.

---

* The record does not show the amount of the original loan.

On November 9, 1950, Ernest Furbee, a Vice-President of the Mellon Bank, at the request of decedent, notified the Insurance Company that Green wished to change the beneficiary to Irving Saul, a grandson of the decedent,* *subject to the assignment in favor of the Mellon Bank.* The beneficiary clause was changed to read: "Mellon National Bank and Trust Company, Washington, Pa., as interest may appear, *the balance, if any,*** to Irving Saul, grandson of the insured." On November 9, 1950, Green's indebtedness to the Bank, for which the policy was collateral, was $3,200. On March 19, 1953, Green executed and delivered to the bank a new note in the amount of $3,500; part of the loan thus obtained was used to liquidate prior obligations to the Bank. This new note, of $3,-500 was the only debt for which the policy was collateral at Green's death.

Green executed his will on November 9, 1950, the same day on which he had Furbee request the insurance company to make appellant the beneficiary of his life insurance policy. In his will, Green directed his executor to pay his debts, and then gave his entire estate, with presently irrelevant exceptions,*** to his son Max, who was also appointed executor.

The Bank collected the proceeds of the $5,000 policy, namely $5,040.33 (the face value plus accumulated dividends), retained $3,543.17 in satisfaction of its loan, and paid over to Saul the remainder which

---

* The "Register of Change of Beneficiary" on the policy showed the actual date of the change to have been March 12, 1951.

** Italics, ours.

*** Testator gave his wife a debt of $1,100 owing to him from his step-daughter. In addition, he created a charge of $3,000 on his real estate in favor of his wife, extinguishable by the transfer to her of a debt in that amount owed him by another step-daughter. The record indicates but does not disclose that Green left an estate of approximately $10,000.

amounted to $1,497.16. In November, 1957 (more than three years after Green's death), Saul presented his claim against Green's Estate for subrogation in the amount of $3,543.17. After his claim was disallowed, he took this appeal.

In *Miller Estate*, 402 Pa. 140, 166 A. 2d 10, the Court pertinently said (page 143) : "The issue which is usually determinative of the problem in this area is the intention of the parties as indicated by the terms of the will, the insurance policy, the assignment and any other pertinent extrinsic evidence. . . . [T]he intention of the parties if ascertainable must control." See to the same effect, *Goldstein Estate*, 384 Pa. 1, 119 A. 2d 278.

Of primary importance are the following clauses of decedent's agreement with the Bank in which he assigned the insurance policy as collateral:

Clause B-1 reserves to the Bank the absolute, unqualified right to collect the net proceeds when due. Clause C-2 reserves the right to the assignor to change the beneficiary. Clause E-1 provides "That any balance of sums received hereunder from the Insurer remaining after payment of the then existing Liabilities, matured or unmatured, shall be paid by the Assignee [i.e., the Bank] to the persons entitled thereto under the terms of the policy had this assignment not been executed." Furthermore both Furbee's letter to the insurance company and the policy as changed, clearly stated that Saul was to receive only the balance which was left after payment of the bank loan.

Appellant argues (1) that because decedent could not read or write,* he did not understand the provisions of the Agreement under which the policy was assigned to the Bank, and (2) that decedent's true intent was not fully and fairly expressed by Furbee's

---

* Max Green, decedent's son so testified.

letter of November 9, 1950, which requested the change of beneficiary to appellant, subject to the assignment in favor of the Mellon Bank.

We are convinced that there is no clear, direct, precise and convincing evidence to prove this claim against the Estate,* i.e., that decedent was either deceived by or ignorant of the provisions of the Agreement or its effect, or the terms of Furbee's letter to the insurance company, and that Green intended his estate to pay Saul the amount of Green's indebtedness to the bank.

Appellant further relies for subrogation on the testamentary direction to pay debts. Every borrower and every bank and every other lender knows that the parties intend a bank loan secured by an insurance policy to be paid shortly after decedent's death, out of the proceeds of the insurance policy, and not out of the insured's estate where the claim may be contested and may be paid, if there are available funds, one or more years after the insured's death. An insured knows at the time he makes the collateral loan that unless he clearly otherwise provides, the loan will be paid out of the proceeds of the policy and the named beneficiary of the policy will be paid only the remaining balance. There can be no subrogation in this collateral loan situation in the absence of (1) clear language in the will (or in the assignment or terms of the policy) directing subrogation, or (2) an oral agreement with decedent which is proved by evidence which is clear, direct, precise and convincing. Cf. *Sivak Estate,* 409 Pa. 261, 185 A. 2d 778; *Petro v. Secary Estate,* 403 Pa. 540, 170 A. 2d 325; *Secary Estate,* 407 Pa. 162, 180 A. 2d 572. Neither is here present.

This case is distinguishable on its facts from *Miller Estate,* 402 Pa., supra, as all parties have rec-

_____

* and thereby diminish the small amount which his son and/or widow would receive.

ognized. There the insured was adjudicated a weak-minded person nearly 30 years after procuring his insurance. It thereafter became necessary, in order to pay his necessary hospital and living expenses, for his guardian, with the approval of the Court, to borrow money, using the policy as collateral. Thus the insured's only intent with respect to the proceeds of the policy was ascertainable as of the time he designated the beneficiaries, when he himself was of sound mind. At such time, his intent was that his beneficiaries should receive the full amount of the policy, and therefore subrogation against his estate was permitted.

*Wilson Estate,* 363 Pa. 546, 70 A. 2d 354, including its dictum as to subrogation, is likewise distinguishable (1) because that case involved the question of the application of the Pennsylvania Inheritance Tax to a decedent's indebtedness to a bank on a collateral loan which the executors had paid out of the assets of the estate (thereby releasing the collateral for the benefit of the designated beneficiaries) and (2) because the facts therein were extraordinary and unique.

We find no merit in any of appellant's contentions.

Decree affirmed; appellant to pay costs.

Mr. Justice ROBERTS concurs in the result.