**Ferraris Estate**

*John L. Harrison, Jr.*, for trustees of deed of trust.

*Seymour C. Wagner*, for decedent's widow.

KURTZ, P.J., June 27, 1973.—In this case, trustees under a deed of trust executed by the above-named decedent on December 11, 1961, claim reimbursement by way of subrogation for the proceeds of an insurance policy assigned by decedent in his lifetime to the Bryn Mawr Trust Company, which proceeds were used to liquidate the mortgage debt of Beth Realty Company following decedent's death.

The chronology of events upon which the question is presented may be stated as follows:

April 25, 1956: Mar Realty Company, a wholly-owned subsidiary of Paoli Inn, Inc., which, in turn, was wholly owned by decedent, obtained a policy of insurance upon decedent's life in which it was named the beneficiary.

May 9, 1956: Mar Realty assigned the policy to Bryn Mawr Trust Company as collateral security for a $100,000 mortgage loan.

December 11, 1961: Decedent executed the above-mentioned declaration of trust, the trustees of which present the instant claim, and the principal beneficiaries of which are decedent's wife and daughter.

December 13, 1961: The ownership of the above-mentioned life insurance policy was transferred from Mar Realty to decedent.

February 7, 1962: The original assignment of said policy from Mar Realty to Bryn Mawr Trust was marked satisfied on the records of the insurance company.

February 7, 1962: The records of said company indicate that the decedent reassigned the policy to Bryn Mawr Trust as collateral for the payment of a $150,000 mortgage loan which Beth Realty Company then made with said bank. Beth Realty was the wholly-owned

subsidiary of Conestoga Mill, Inc., which was owned entirely by the decedent. Said mortgage with interest was payable in 10 years in monthly installments of $1,647. As a condition to the granting of that loan, Bryn Mawr stipulated that the decedent assign to it insurance upon his life in the amount of $70,000.

February 8, 1962: Decedent designated the trustees of the trust he created in 1961 as the new beneficiaries of said policy.

March 14, 1963: Decedent executed his last will, a holographic will, which provided: ". . . I leave *everything* I possess or own to my wife, Marion Elizabeth Ferraris to do with as she thinks best."

March 18, 1963: Decedent took his own life.*

As we have indicated above, following decedent's death the Bryn Mawr Trust Company applied the proceeds of the life insurance to the payment of the mortgage loan. We must now decide whether the trustees-claimants may be subrogated to the assets of decedent's estate by the face amount of the policy. In addition to the facts set forth above, we must note that each assignment of the insurance to the Bryn Mawr Trust was made upon the same terms and that under those terms the assignee was given the sole right to collect the net proceeds of the policy from the insurer when it became a claim by death or maturity; that it had the sole right to surrender the policy and receive the value thereof at any time provided by its terms; that it was granted the sole right to obtain loans upon the policy; the sole right to collect and receive all distributions or shares of surplus, dividend deposits or additions to the policy; and the sole right to exercise all nonforfeiture rights permitted by the terms of the

---

* Although the stipulation of facts attached to the administrator's brief does not state that decedent died by his own hand, that fact was stated and agreed to when argument was heard.

policy. It provided further that the assignment was made and that the policy was to be held as collateral security for any and all liabilities of the assignor either then existing or that may thereafter arise and that any balance of sums received under its terms from the insurer which remain after the payment of the then existing liabilities "shall be paid by the Assignee to the persons entitled thereto under the terms of the policy had this assignment not been executed; . . . ."

The rule by which we must reach our decision has been announced in Miller Estate, 402 Pa. 140, 143 (1960), and restated in Green Estate, 415 Pa. 161, 164 (1964), as follows:

"The issue which is usually determinative of the problem in this area is the intention of the parties as indicated by the terms of the will, the insurance policy, the assignment and any other pertinent extrinsic evidence . . . . [T]he intention of the parties if ascertainable must control."

In this case, the will executed more than a year after the assignment and within a day or two prior to death gives everything to the widow. The insurance policy is not in evidence. However, it is significant that the right to change the beneficiary was reserved and that that right was exercised in favor of the trust at about the same time the assignment here in question was made. The assignment itself provides that the assignee may collect the net proceeds of the policy and that any balance remaining after payment of the debt shall be paid to the persons entitled thereto under the terms of the policy. The extrinsic evidence bearing upon the issue is to the effect that the debt for which the policy was assigned as collateral was not the personal debt of decedent but was created by a corporation which he owned and that property of that corporation was pledged as the primary security for the payment of that

debt. In addition, it is worthy to note that the debt thus created was to be paid by the principal debtor, i. e., the corporation, in monthly installments, over a period of 10 years, and that in a prior transaction which possessed some of the same characteristics as did this one, the policy of insurance had been reassigned to the debtor and had thereafter become the property of decedent.

Although the assignment considered by the Supreme Court in Green Estate, supra, included terms identical with those now before us, the facts of that case may be distinguished from the facts in this one. In that case, the Supreme Court noted that decedent's request to the insurance company designating a change of beneficiary indicated that the rights of the new beneficiary were to be "subject to the assignment in favor of the" lending bank. When the instant decedent designated the trustees of the trust as the beneficiaries of this policy, no such restriction was imposed.

We believe that the facts recited above warrant the conclusion that the parties intended that the debt thus created would be a debt of the borrowing corporation, hence, a debt of decedent's estate and that if that estate was financially able to pay, it should do so, thereby making the proceeds of the insurance payable to the trust. In reaching that conclusion, we rely upon the fact that the trustees' rights were not specifically made subject to the rights of the bank under the terms of the assignment; that the debt itself was secured by real estate which for all practical purposes was owned by decedent; and that provisions for the retirement of that debt had been calculated over a period of 10 years in regular installments, thereby indicating that such payments were to be derived from the business activity in which the borrowing corporation or the cor-

poration which owned it were then engaged. Accordingly, the claim of the trustees will be allowed. Our adjudication of the administrator's account will so indicate.