TAXIS, P. J.,
— The account shows a balance for distribution of $355, composed of 92V2 shares Clayton L. Brown, Inc., valued at $92.50, an undivided half interest in two lots on Woodlyn Avenue, Lower Providence Township, Montgomery County, carried at $250, and cash. Other assets listed are an additional 92 V2 shares Clayton L. Brown, Inc., and an unliquidated claim by the estate against Clayton L. Brown, Inc., but no values are assigned to either of these.
Transfer inheritance taxes have not been paid.
The present account was filed in connection with a dispute which has arisen between Elizabeth W. Brown, as executrix and also as surviving spouse electing to take against decedent’s will and as a claimant against the estate for reimbursement of advances made by her, and Robert C. Brown, decedent’s brother and former business associate. Robert C. Brown has filed a petition to require the executrix to turn over to him the 185 shares of stock of Clayton L. Brown, Inc., owned by decedent at his death, for which petitioner has tendered a price of $1 per share. The petition alleges, in summary, the following facts:
*89 Petitioner and decedent were together engaged in the real estate and insurance business at decedent’s death. The business was conducted through a closely-held corporation, Clayton L. Brown, Inc. The corporation was formed in I960, but the business had been conducted by petitioner and decedent, together with Clayton L. Brown, their father, for many years previous to this. At the formation of the corporation and later, the father and the two sons agreed that in case of the death of either son after the death of the father, which has occurred, the survivor would have the option to purchase the shares of the deceased for $1 per share, plus certain other amounts over which there is no dispute. The father died in 1963, and on September 1, 1965, petitioner and decedent, now sole shareholders of the corporation, readopted the $1 per share option agreement, which remained in force at decedent’s death. The petition finally avers that Robert C. Brown properly exercised the option (this is admitted), that the estate is solvent and that consequently the executrix should be required to transfer the 185 shares to Robert C. Brown.
Most of the allegations are admitted in substance in an answer filed on behalf of Elizabeth W. Brown. However, it is denied that the estate is solvent, and ownership of 92shares of the 185 shares is claimed in any event by Elizabeth W. Brown by virtue of her election to take against the will. It was further set forth that Robert C. Brown is the only possible purchaser of the stock, and that unless sufficient funds were received from its sale to pay the administrative expenses, charges and debts of the estate, there would, in fact, be an insolvency. Since Mrs. Brown claims a sum in excess of $15,000 from the estate for repayment of advances made by her, which she alleges should ultimately be charged *90 against the estate, and since there are even more debts and deductions as yet unpaid, she suggests that in case of insolvency she would be entitled at least to ownership of all of the 185 shares of Clayton L. Brown, Inc., held by decedent at his death.
A hearing was held on November 27, 1970. Much history and background were produced. The various corporate records, containing the resolutions and agreements essentially as set forth in the petition, were produced, and it appears undisputed that the agreement between petitioner and decedent is as alleged. Moreover, it was also shown that in his will decedent specifically devised the shares in question to Robert C. Brown, in case the corporate agreements were not effective to accomplish that end, and then Elizabeth W. Brown was named sole residuary legatee. It was also demonstrated that Elizabeth W. Brown was not a party to the corporate agreements in any way, although she was aware of them prior to decedent’s death and also of the provision in her husband’s will in favor of Robert C. Brown.
In the operation of the business, Robert C. Brown was responsible for the real estate brokerage, management and appraisal portion of the business, and decedent operated the insurance accounts. In recent years, the real estate portion of the business has been increasing, while the insurance business has decreased in volume. In fact, at decedent’s death, Robert C. Brown turned over the insurance accounts of Clayton L. Brown, Inc., to another insurance firm for management and administration.
The present location of the business is in a building owned by the corporation at 824 DeKalb Street, Norristown, Pa. It is agreed that this building is presently worth $35,000. It was purchased in *91 1960, at about the same time the corporation was formed, for $25,000, to which approximately another $16,000 was added for purposes of remodeling. Here, some inconsistency in the testimony appears. Elizabeth W. Brown testified that her husband raised his half of the total cost of acquiring the building by borrowing $9,200 from Peoples National Bank (now American Bank and Trust Co.) on two notes, for which loan he pledged life insurance policies, and by taking an $11,000 mortgage on their residential real estate, in which she joined, since the property was owned by the entireties. Petitioner, however, in effect, denies this, since the records produced by him show that the $11,000 mortgage was not created until 1963. It also appears that the notes for $9,200 date only from 1962 and 1964, not 1960. The residence in question had been received by decedent as a gift from his father prior to his marriage, and was conveyed by him after his marriage to himself and his wife jointly. Petitioner testified that, when the corporation was formed, each brother contributed $3,000 and the father put up the $16,000 required to remodel the building, the balance of the purchase price being covered by a mortgage. In any event, however, Elizabeth W. Brown is not basing any of her claims directly on the above transactions with the corporation.
Since the solvency of the estate is in issue, both parties produced evidence of the value of Clayton L. Brown, Inc., at the hearing, although petitioner continues to maintain his right to purchase decedent’s 185 shares for $1 per share, regardless of such value.
On behalf of Elizabeth W. Brown, there was testimony from Herbert L. Greenberg, a certified public accountant, who had conducted an audit of *92 the corporate books in order to determine the true worth of the corporation. Using 1967 figures, the last full year available to him, Mr. Greenberg recited a book value of $37,000, in which the real estate was carried at a depreciated value of $27,000, $8,000 below its agreed market value. Thus, the adjusted book value of the business was fixed by Mr. Greenberg at $45,000. However, Mr. Greenberg went on to estimate that good will exists in the corporation in the additional amount of some $37,000, and over this conclusion there is a serious dispute. He reached this figure by making two assumptions, deemed reasonable by him. After noting that the net income of the corporation was maintained at approximately zero by the payment of salaries, he determined what to him would have been reasonable salaries for the operation of the business, and concluded, for 1967, that only $28,000 of the $37,500 actually paid as salaries was reasonable; hence the $9,500 difference in reality represented corporate earnings. Certain other adjustments were made which yielded, ultimately, a figure of $12,500 as the fair profit figure for 1967. The second assumption was that this should be multiplied by a factor of three to determine a figure for good will; that is, three times the fair annual earnings of the corporation was said to be a measure of what a purchaser would pay for the business in an arm’s length transaction. Mr. Greenberg further pointed out that multipliers up to five can be used for this purpose. Adding the figure of $37,000 for good will to the adjusted book value, the witness reached a fair market value for the corporation of $82,000, some $222 per share.
*93 Petitioner’s evidence on fair market value shows a much different picture. His witness was Donald R. Carr, also a certified public accountant, who took care of the books of the Brown business and prepared its tax returns and other financial documents for some 15 years. He testified that there was no good will in the corporation itself, because good will, in a personal service business, is in the individual rendering the service. To him, good will would bring value from a purchaser of Clayton L. Brown, Inc., only if Robert Brown himself was included. Moreover, Mr. Carr reduced the book value of the corporation by the amount of an alleged $20,000 embezzlement, about which the facts are not very clear. This loss was supposedly discovered toward the end of 1968, but it appears that little has been done by petitioner to make it good. No civil or criminal action has been instituted, nor was the exact manner in which the loss occurred, or the perpetrator of it, brought out. However, the loss was certainly real, since the corporate real estate had to be remortgaged to make up for the loss of cash. For these reasons, therefore, Mr. Carr fixed the corporate worth at $28,000 (for 1968, a slightly better year in business volume than 1967), or about $76 per share. We note that, although the precise value of these shares may become highly important in the future, for the moment the chief value of this evidence is to show clearly that, by any standard, the $1 per share price put on them by the corporate agreement represents only a nominal consideration, and that the agreement is in substance, therefore, a gift by the deceased to the survivor.
An additional complicating factor here is the *94 existence in the estate of the unliquidated claim against Clayton L. Brown, Inc. An action on this claim has been brought on the civil side of this court, no. 69-16837, by Elizabeth W. Brown as executrix. It seeks to recover an amount allegedly standing to the credit of decedent on the books of the corporation ($1,696.37), as well as commissions due decedent for sales negotiated by him before his death. The suit essentially seeks an accounting, as plaintiff concedes that she has only a very vague idea of the amounts involved, and actually this litigation has not proceeded very far. The executrix estimates, however, that it cannot involve more than $7,500 at best, and perhaps much less. The dispute which has arisen between the parties has unfortunately resulted in a lack of communication that interferes greatly with a rapid resolution of these problems.
At present, we believe it would be premature to direct the executrix to turn over any of the 185 shares of Clayton L. Brown, Inc., held by this estate to petitioner; hence, we refuse the prayer of the petition for the time being. Nevertheless, the relief requested by Robert C. Brown may well become proper in the future, depending on the resolution of the other unsettled matters in the estate; therefore, the petition will not be dismissed, but held in abeyance so that petitioner may, at an appropriate time, renew his prayer. We reach this conclusion for the following reasons:
If the estate is insolvent, all of its assets must be made available for its creditors as their interests and preferences may appear. Although there has been much and varied testimony by accountants concerning the theoretical value of Clayton L. Brown, Inc., shares, the parties apparently have yet *95 to come to grips with the problem of how much can actually be obtained for them from any interested purchaser. It is likely true that Robert C. Brown is at the present the sole prospective purchaser, and it appears that he is now interested only in paying the $1 per share price which the corporate agreement specifies. If this remains so, however, it is difficult to see how insolvency is to be avoided unless the other assets turn out to be worth much more than anticipated, or the debts and charges much less. In connection with this, we now turn to a consideration of the claims of Elizabeth W. Brown for reimbursement for certain charges and payments made by her.
Mrs. Brown seeks a total of $15,527.71. Petitioner objects primarily to her claim for $9,200, which sum was deducted from the proceeds of insurance policies on decedent’s life which had been pledged to American Bank and Trust Company as collateral. Mrs. Brown was named beneficiary of the policies and contends that the estate is primarily obliged to discharge this indebtedness, and that there is, therefore, a right of subrogation in her against the estate. With this, we agree. The intention of the parties, if ascertainable, controls in such cases: Miller Estate, 402 Pa. 140. There, and also in Wilson Estate, 363 Pa. 546, it was determined that the mere assignment of a fife insurance policy as collateral for a loan would not serve to show an intent to reduce the beneficiary’s interest to only the net proceeds; hence, under such circumstances, when the loan is paid from the proceeds, the beneficiary is entitled to subrogation. Only where some definite act by the owner of the policy evidences a different intent, is a different result reached. For example, in Green Estate, *96 415 Pa. 161, the policy was not simply assigned, but the lender was specifically added as the first beneficiary, with only . . . the balance (of the proceeds), if any, to . . .” decedent’s grandson. Accordingly, Elizabeth W. Brown is entitled to subrogation.
As to petitioner’s claim that Elizabeth W. Brown is a mere volunteer as to the various other advances which she has made, and, therefore, should not be able to recover them from the estate, this is plainly of no merit absent proof that these items, or particular ones of them, are not proper charges against the estate in the first place. Therefore, on the present state of the record, the claim of Elizabeth W. Brown for reimbursement in the amount of $15,527.71 is allowed.
For present purposes, we could perhaps terminate this adjudication here, but since counsel for both sides have also presented and argued the legal issue concerning the effect and scope of the widow’s election, we shall express our opinion on this. We believe this matter is ruled by Burk Estate, 15 Fiduc. Rep. 449, 37 D. & C. 2d 528, a prior decision of this court. We find no material distinction between the circumstances in Burk Estate and those of the present case. Both involve so-called buy-sell agreements, under which the survivor receives an option to purchase the interest of the deceased in a closely-held corporation; in both, the price to be paid was nominal in relation to the value being acquired by the purchaser, and in neither was the surviving spouse a party to the agreement. It appears that Burk Estate, in a sense, broke ground in this particular area of the law, and we are conscious that its holding *97 creates some problems in solving others. It would, however, be redundant to repeat what we said in length in Burk Estate, concerning the reasons for our decision. The only contrary authority which has been brought to our attention is Mather Estate, 410 Pa. 361, in which a buy-sell agreement involving only a nominal consideration was upheld against the contention that it represented an unreasonable restraint on the alienation of the stock; but the question of widow’s rights was not involved, and we believe, therefore, that the case is not applicable.
We understand, as pointed out by petitioner, that the transfer of a substantial interest in Clayton L. Brown, Inc., to someone other than petitioner would be contrary to the intention of the Browns, particularly Clayton L. Brown, Jr., as manifested in the corporate resolutions and agreements. However, the enforcement of a widow’s rights often runs counter to the intentions of her husband. We also reject petitioner’s attempt to distinguish Burk Estate from the present case on the grounds that in the former, involving an arrangement between father and son, the agreement was a clear substitute for a testamentary transfer since the father would likely die first, while the latter, with an agreement between brothers engaged in a functioning business, exemplifies a case where valid business purposes were the chief motivation for the agreement. However, there were valid business reasons for the contract between the father and the son in Burk Estate; the son had expertise in the business and had operated it for some years, while the widow knew little or nothing about it. The ultimate pur *98 pose of the agreements in both cases was to transmit property at the death of its owner, for a nominal amount, and without regard to the widow’s statutorily vested rights, and both cases therefore produce the same result.
There was considerable comment concerning Burk Estate. See Fiduc. Review, Sept. 1965; 40 Temple Law Quarterly 26; 114 U. of Pa. L. R. 1006. The commentators quite correctly pointed up certain resulting difficulties, both in the management of close corporations in case of death, and in extending the rationale of the case to other factual situations. It was suggested by one writer that a solution might lie in allowing the widow to elect against and claim the fair market value of the shares, but not the shares themselves unless the fair market value were not paid; yet we would still face the difficult task of determining fair market value, together with the legal difficulties attendant upon what would actually amount to the reformation of the buy-sell agreement. In any event, the present case supplies no reason to modify the rule in Burk Estate, and we hold that Elizabeth W. Brown, by virtue of her election, has become the owner of 92Vfc shares of Clayton L. Brown, Inc., subject only to any charges, debts, or claims superior to her distributive rights.
Accordingly, all of the assets of the estate are awarded back to accountant for further administration and subsequent accounting.
The account is confirmed, and it is hereby ordered and decreed that Elizabeth W. Brown, executrix, as aforesaid, forthwith make the distributions herein awarded.
*99 And now, March 19, 1971, this adjudication is confirmed nisi.